STATE of North Dakota, Plaintiff
and Appellant,

v.

Randy Joe LANGSETH, Defendant
and Appellee.

Cr. No. 920125.

Supreme Court of North Dakota.

Nov. 10, 1992.

Richard J. Riha (argued), Asst. State's Atty., Bismarck, for plaintiff and appellant.

Wheeler Wolf, Bismarck, for defendant and appellee; argued by William D. Schmidt, Bismarck.

MESCHKE, Justice.

The State appeals the dismissal of a charge against Randy Joe Langseth for driving while his operator's license was suspended. We affirm.

Patrolling one night in January at 11:54 p.m., Deputy Sheriff Troy Karlberg came upon a van stopped along a rural gravel road. The van's lights were on, and its engine was running. Karlberg pulled behind the van and activated the patrol car's "warning lights." The van drove ahead but stopped after 20 feet. Karlberg apparently followed with his "warning lights" flashing and again stopped behind the van. Langseth exited the van and met Karlberg out of his patrol car. Karlberg asked Langseth whether he had any problem, and Langseth answered that he did not.

During this brief conversation, Deputy Karlberg detected an odor of alcohol from Langseth. Karlberg asked Langseth to perform field sobriety tests. Langseth passed them. Karlberg then asked Langseth for his operator's license. From a radio check, Karlberg learned that Langseth's license was suspended. Karlberg charged Langseth with driving while his license was suspended.

Langseth moved the trial court to dismiss the charge, arguing that Karlberg had no articulable and reasonable suspicion of unlawful activity to stop Langseth. The State responded that Karlberg was performing a "community caretaker" function in stopping to see whether Langseth needed help. Claiming that the violation was discovered during a consensual encounter, the State contended that Langseth was properly charged.

Based on Deputy Karlberg's affidavit about the event, the trial court concluded that Karlberg had no reason to stop Langseth. The court also ruled that an officer "may not escalate" a consensual encounter "into examination[s], tests, [or] searches without and unless the Defendant performs some other act to bring into effect the articulable and reasonable suspicion [ ] of violation of a criminal law." The court dismissed the charge, evidently concluding that Langseth was signaled to stop and that it was an unreasonable seizure under the Fourth Amendment.

On appeal, the State concedes that Deputy Karlberg had no reasonable and articulable suspicion for a valid investigative stop of a moving vehicle. Rather, the State contends that the trial court misconstrued the community-caretaker function of a police officer. Langseth counters that Deputy Karlberg made an invalid investigative stop when he flashed official lights to "pursue" and to stop Langseth's van after it started to drive away.

■ Ordinarily, an officer must have an articulable and reasonable suspicion that a law has been or is being violated to stop a moving vehicle for an investigation. *State v. Neis*, 469 N.W.2d 568, 569 (N.D.1991). For example, an officer cannot force a moving vehicle to stop to investigate who the driver is or why he had been reported parked in a residential neighborhood shortly before. *City of Minot v. Nelson*, 462 N.W.2d 460 (N.D.1990). Yet, an officer may investigate an illegally parked vehicle. *See Wolf v. North Dakota Highway Comm'r*, 458 N.W.2d 327 (N.D.1990). As explained in *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d

621 (1981), an investigative stop of a moving vehicle "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."

■ We gauge a police officer's conduct in detaining a citizen by the Fourth Amendment's "general proscription against unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

*Id.* at 19, n. 16, 88 S.Ct. at 1879, n. 16. Forcing a moving vehicle to stop and detaining its occupant constitutes a seizure within the meaning of the Fourth and Fourteenth Amendments even though the purpose of the stop is limited and the detention is quite brief. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979). The question here is whether Karlberg's contact with Langseth was simply a caretaking encounter, or became an investigative stop when Karlberg "pursued" Langseth to stop him as he started to drive away.

■ Not every police contact with a citizen is a seizure. "Local police officers ... frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973). For example, a policeman's approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response. *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 334–35 (N.D.1987) (VandeWalle, Justice, concurring). On the other hand, even a casual encounter can become a seizure if the officer acts in a manner that a reasonable person would view as threatening or offensive if done by another private citizen—through an order, a threat, or display of a weapon. *Id.* at 335.

So too, other police action which one would not expect if the encounter was between two private citizens—boxing the car in, approaching it on all sides by many officers, or use of flashing lights as a show of authority—will likely convert the event into a Fourth Amendment seizure.

3 LaFave, *Search and Seizure* § 9.2(h), pp. 416–17 (1987) (footnotes omitted), quoted by Justice VandeWalle, concurring in *Wibben*, 413 N.W.2d at 335. Thus, an officer's display of authority to bring about a stop of a moving vehicle makes it a seizure.

■ Of course, an officer may learn something during a caretaking or casual encounter that leads to a reasonable suspicion and that reasonably justifies further investigation, a seizure, or even an arrest. *See Wibben* (checking a car parked in a parking lot); *State v. Ellenbecker*, 159 Wis.2d 91, 464 N.W.2d 427 (App.1990) (Inquiry at a disabled car stopped on shoulder); *Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990) (Check on a car parked on the street with lights on and motor running); *Kozak v. Commissioner of Public Safety*, 359 N.W.2d 625 (Minn.App.1984) (Check on a driver asleep in a car parked on highway shoulder); *State v. Vohnoutka*, 292 N.W.2d 756 (Minn.1980) (Check on a car that drove into and parked in a closed service-station's driveway at night). A caretaking encounter does not foreclose an officer from making observations that lead to a reasonable suspicion.

■ If Deputy Karlberg's approach to Langseth's van was merely a caretaking encounter, the fact that it led to suspicion of a violation would not make the initial encounter a seizure or the charge unconstitutional. In this respect, the trial court correctly ruled that an officer "may not escalate" a consensual encounter into a seizure unless a valid reason arises for doing so.

However, the trial court found that Deputy Karlberg's contact with Langseth became a seizure by the "pursuit" with "warning lights," so that it was not simply a caretaking encounter. We agree.

A trial court's determination of a suppression motion will be affirmed if, after conflicts in the evidence are resolved in favor of affirming, there is sufficient competent evidence to support the court's disposition. *State v. Bryl*, 477 N.W.2d 814, 816 (N.D.1991). *Bryl* reminds us that this standard of review recognizes the trial court's superior opportunity to weigh the evidence and to judge the credibility of the witnesses.

The trial court found that, when Deputy Karlberg pulled up behind the van and then followed it after it started to drive away, Karlberg used the patrol car's "warning lights." It is unclear whether Karlberg used the amber lights authorized for police cars "for the purpose of maintaining traffic flow," (NDCC 39–10–03(5) [1] and NDCC 39–01–01(2)(a)(2) [2]), as the State contends, or whether Karlberg used "flashing red or combination red and white lights." NDCC 39–10–03(2) and (3).[3] While Deputy Karlberg said he used amber lights, the trial court's finding stated "warning lights." Ordinarily, amber lights are used for the "purpose of maintaining traffic flow," rather than "a visual ... signal to bring [a] vehicle to a stop." While at first Langseth may have intended to check on the stopped van to see if the driver needed assistance, Karlberg's "pursuit" with flashing lights as Langseth started to drive away converted the encounter into a seizure. We conclude that, whichever set of lights Karlberg used, the pursuit with flashing lights here converted the encounter into a stop by an official police vehicle.

"Any driver of a motor vehicle who willfully fails or refuses to bring the vehicle to a stop, or who otherwise flees or attempts to elude, in any manner, a pursuing police vehicle or peace officer, when given a visual ... signal to bring the vehicle to a stop, is guilty of a class A misdemeanor." NDCC 39–10–71.[4] *See State v. Indvik*, 382

1. *NDCC 39–10–03(5)* says:

   Any law enforcement officer as provided in paragraph (2) of subdivision a of subsection 2 of section 39–01–01 having stopped another vehicle along a highway, and while still involved in that incident, or any other such activity, may use amber lights, visible under normal atmospheric conditions for at least five hundred feet [152.4 meters], for the purpose of maintaining traffic flow.

2. The relevant parts of NDCC 39–01–01 say:

   In this title, unless the context or subject matter otherwise requires:

   *    *    *    *    *    *

   2. Authorized emergency vehicles:
   a. Class A authorized emergency vehicles means:

   *    *    *    *    *    *

   (2) Vehicles when operated by or under the control of a police officer having authority to enforce the provisions of this title or by a salaried employee of any municipal police department within the municipality or by any sheriff or deputy sheriff not to include special deputy sheriffs....

3. Subsections 2 and 3 of NDCC 39–10–03 say:

   2. The exceptions herein granted to a class A authorized emergency vehicle apply only:
   a. When the authorized emergency vehicle is in pursuit of or apprehension of a violator or a suspected violator requiring the use of these exemptions.
   b. When the class A authorized emergency vehicle is being operated in response to a reported emergency involving a possible personal injury, death, or damage to property, and when giving audible signal by siren or when giving adequate warning by use of a flashing red or combination red and white lights which are visible under normal atmospheric conditions for at least five hundred feet [152.4 meters].
   c. In any instance when the head of a law enforcement agency deems advisable within the area of his jurisdiction for the protection of person and property and when giving audible signal by siren or when giving adequate warning by use of a flashing red or combination red and white lights which are visible under normal atmospheric conditions for at least five hundred feet [152.4 meters].
   3. No emergency vehicle may display or permit to be displayed any red lamp except when operated on official business.

4. Another part of NDCC 39–10–71 says:

   A signal complies with this section if the signal is perceptible to the driver and:
   1. If given from a vehicle, the signal is given by ... emergency light, ... and the stopping vehicle is appropriately marked showing it to be an official police vehicle; or

   *    *    *    *    *    *

N.W.2d 623, 627 (N.D.1986) ("To constitute a stop by the use of flashing red lights, the officer must have the intent to stop the specific motorist and the motorist must be cognizant of the officer's presence."). *See also State v. Walp*, 65 Or.App. 781, 672 P.2d 374 (1983) (Seizure when police car pulled up behind car stopped on shoulder of road and officer turned on overhead lights); *State v. Stroud*, 30 Wash.App. 392, 634 P.2d 316 (1981) (Officers' use of both emergency lights and high-beam headlights to summon occupants of a parked car was a show of authority that constituted a seizure).

As Karlberg stopped behind Langseth's van, the official use of flashing lights became a signal that Langseth should stop as he started away. Karlberg's short pursuit with flashing lights was not just a caretaking encounter to see if Langseth needed help. Rather, it became a seizure.

The State concedes that Karlberg had no basis for an articulable and reasonable suspicion of a violation of law. Therefore, we conclude that this stop was an unreasonable seizure under the Fourth Amendment.

■ Still, the State argues that Deputy Karlberg was "permitted" by law to ask for Langseth's operator's license. The State relies on the statute requiring that every driver, "when operating a motor vehicle," "shall display the [operator's license], upon demand of any . . . patrolman, [or] peace officer. . . ." NDCC 39–06–16. The State's reliance is misplaced.

■ NDCC 39–06–16 does not authorize a discretionary stop of a vehicle, without reason, to check an operator's license. *See Delaware v. Prouse*, 440 U.S. at 662, 99 S.Ct. at 1400 ("[R]egulatory inspections unaccompanied by any quantum of individualized, articulable suspicion must be undertaken pursuant to previously specified 'neutral criteria.' "). *See also State v. Goehring*, 374 N.W.2d 882 (N.D.1985). NDCC 39–06–16 did not authorize Deputy Karlberg to stop Langseth's van, and does not make the stop reasonable under the Fourth Amendment.

Accordingly, we affirm the trial court's dismissal of the charge as the result of an unconstitutional seizure.

ERICKSTAD, C.J., LEVINE and JOHNSON, JJ., and DONALD L. JORGENSEN, District Judge, concur.

DONALD L. JORGENSEN, District Judge, sitting in place of VANDE WALLE, J., disqualified.