CITY OF GRAND FORKS,
Plaintiff and Appellee,

v.

Curtis L. ZEJDLIK, Defendant
and Appellant.

Criminal No. 950412.

Supreme Court of North Dakota.

June 27, 1996.

Gary E. Euren, Assistant City Prosecutor, Grand Forks, for plaintiff and appellee.

Donovan D. Dearstyne of Spaeth, Thelen, Dearstyne & Van Voorhis, Grand Forks, for defendant and appellant.

VANDE WALLE, Chief Justice.

Curtis Leeroy Zejdlik appealed from a judgment of conviction, founded upon a conditional plea of guilty, for actual physical control of a vehicle in violation of section 8– 0205 of Grand Forks City Ordinances. We conclude the officer had a reasonable and articulated suspicion for his actions, and we affirm.

On August 11, 1995, at approximately 1:07 a.m., Officer Lonnie Punton of the Grand Forks Police Department, saw a white van, with its lights on, legally parked along University Avenue in Grand Forks, North Dakota. Officer Punton initially drove past the vehicle. But, when he drove by the vehicle a second time, the officer observed what he thought to be a person slumped over the steering wheel. Parking behind the vehicle, Officer Punton noticed that the vehicle was running. As Officer Punton approached the vehicle, he saw an adult male slumped over the steering wheel holding a beverage glass in his hand. The officer attempted to gain the attention of the individual by repeatedly knocking on the driver's window. When the driver awoke, he voluntarily rolled down his window. The officer inquired of the driver whether he was "okay." The driver did not respond.

The officer requested the driver to step out of the vehicle and walk toward him. The officer testified that Zejdlik "seemed to be okay" while he was stepping out of the vehicle, but his steps were slow and deliberate as he began walking. The officer characterized Zejdlik's upper and lower body movements as not being in "synchronization." The officer asked to see Zejdlik's driver's license. Although Zejdlik had difficulty finding the license inside his wallet, he gave his license to the officer. Officer Punton then asked Zejdlik to accompany him to the patrol car. While in the patrol car, Officer Punton smelled a strong odor of alcohol, which he had not previously noticed. After further investigation, Officer Punton arrested Zejdlik for actual physical control.

On October 9, 1995, Zejdlik moved to suppress evidence from the encounter, arguing that Officer Punton lacked reasonable and articulable suspicion for his actions in "stopping" Zejdlik. On October 12, 1995, Zejdlik served the City with a brief in support of his motion to suppress. The affidavit of service was filed with the district court on October

13, 1995. On October 27, 1995, the City served its brief opposing the motion. At the hearing on the motion to suppress, Zejdlik requested the court to grant the motion to suppress because of the City's untimely response under Rule 3.2, N.D.R.O.C. The trial court denied the request and the motion to suppress.

On December 6, 1995, Zejdlik conditionally pled guilty under Rule 11(a)(2), N.D.R.Crim. P., to actual physical control of a motor vehicle, reserving his right to appeal. On appeal, Zejdlik presents two issues: 1) whether the trial court erred in denying his request to suppress because of the untimeliness of the City's response; and 2) whether the trial court erred in not ordering suppression of the evidence because Officer Punton's actions were not justified on the basis that Zejdlik was in need of help, and not supported by a reasonable and articulable suspicion that Zejdlik was violating the law.

■ Under Rule 3.2, N.D.R.O.C., when the moving party serves and files a brief in support of a motion, the adverse party has ten days after the service of the brief within which to serve and file an answer brief. To support his argument that the trial court should have granted his motion to suppress because the City's brief was late, Zejdlik cites Rule 3.2(b), N.D.R.O.C., which provides that "[f]ailure to file a brief by the adverse party is an admission that, in the opinion of party or counsel, the motion is meritorious." In this instance, the City did not serve and file its answer brief within the allotted ten days; such failure is an admission that the motion has merit. But, as we explained in *Hartman v. Hartman*, 466 N.W.2d 155, 156 (N.D.1991), "[a]lthough a party who fails to respond or make an appearance assumes a substantial risk that the trial court will act favorably on the motion, the moving party has the burden of demonstrating to the trial court's satisfaction that he is entitled to the relief requested." Zejdlik argues that, unlike the movant in *Hartman*, he presented evidence at the hearing which "showed that [he] was entitled to a favorable decision on the [m]otion." We disagree.

■ Reviewing a trial court's disposition of a motion to suppress, we defer to the trial court's findings of fact and resolve conflicts in testimony in favor of affirmance. *City of Grand Forks v. Egley*, 542 N.W.2d 104 (N.D. 1996). We affirm the trial court's decision "unless, after resolving conflicting evidence in favor of affirmance, we conclude there is insufficient competent evidence to support the decision, or unless we conclude the decision goes against the manifest weight of the evidence." *State v. Hawley*, 540 N.W.2d 390, 392 (N.D.1995). " 'Although the underlying factual disputes are findings of fact, whether the findings meet a legal standard, in this instance a reasonable and articulable suspicion, is a question of law.' " *Egley*, 542 N.W.2d at 106 [quoting *State v. Ova*, 539 N.W.2d 857, 858 (N.D.1995) ]. Questions of law are fully reviewable. *State v. Glaesman*, 545 N.W.2d 178 (N.D.1996). *See also Ornelas v. United States*, —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) [holding that the ultimate question of reasonable suspicion should be reviewed de novo].

■ We have explained that not every law enforcement-citizen encounter constitutes a seizure protected by the Fourth Amendment. *Glaesman*, *supra*; *State v. Halfmann*, 518 N.W.2d 729 (N.D.1994) [discussing three tiers of encounters: arrests which must be supported by probable cause; investigative, or *"Terry,"* stops which must be supported by a reasonable and articulable suspicion; and community caretaking encounters which do not constitute Fourth Amendment seizures]; *State v. Langseth*, 492 N.W.2d 298 (N.D.1992) [differentiating a simple community caretaking encounter from an investigative stop]. Furthermore, we have recognized that "[t]he law distinguishes between the approach of an already stopped vehicle and the stop of a moving one." *State v. Franklin*, 524 N.W.2d 603, 604 (N.D.1994). In *Borowicz v. North Dakota Dept. of Transp.*, 529 N.W.2d 186 (N.D.1995), we reiterated:

" '[I]t is not a seizure for an officer to walk up to and talk to a person in a public place, including a person in a parked car. "[A] policeman's approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and

does not demand a response." *State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992), citing *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 334–35 (N.D.1987) (VandeWalle, Justice, concurring). Still, as we explained in *Langseth*, if an officer learns something during a public encounter with a person that causes a reasonable suspicion or probable cause, the encounter can justify further investigation, seizure, and even arrest. A public encounter does not foreclose the officer from making observations that reasonably lead to further action.'"

*Id.* at 188 [quoting *State v. Franklin*, 524 N.W.2d 603, 604–05 (N.D.1994) ].

 In this instance, the trial court determined that the officer was exercising his community caretaking function by approaching the vehicle. *See Franklin, supra.* Arguably, a stop occurred when the officer asked Zejdlik to get out of his vehicle and be seated in the patrol car. Deciding that the encounter escalated to a "stop," the trial court was guided by our decision in *Borowicz*. Zejdlik attempts to distinguish his case from *Borowicz*. In *Borowicz*, the officer detected the odor of alcohol during his initial contact with Borowicz; whereas, here, Officer Punton did not detect the odor of alcohol until Zejdlik was in the patrol car, after the "stop" had occurred. Furthermore, Zejdlik argues, Officer Punton testified that Zejdlik "seemed to be okay" when he stepped out of the vehicle. Although the point at which the officer detected the odor of alcohol may distinguish the facts in this case from those in *Borowicz*, that distinction does not justify a reversal.

 To make a stop, an investigating officer must have a reasonable and articulable suspicion that a law has been or is being violated, but "[t]he concept of such a reasonable suspicion is not 'readily or even usefully, reduced to a neat set of legal rules.'" *State v. Sarhegyi*, 492 N.W.2d 284, 286 (N.D.1992) [quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989) ]. While there may be other explanations for the officer's observations, the reasonable and articulable suspicion standard is less stringent than probable cause. *Ova*, 539

N.W.2d at 858–59 (restating the distinction between the standards). " 'The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect potential criminal activity.'" *Id.* at 859 [quoting *State v. Hornaday*, 477 N.W.2d 245, 246 (N.D.1991) ]. Here, the initial absence of the odor of alcohol and Zejdlik's composure do not negate the reasonable and articulable suspicion that Officer Punton had accumulated during the encounter. Zejdlik ignores Officer Punton's testimony that leads us to conclude that by the time Officer Punton requested Zejdlik to get out of the vehicle, he had observed enough to give him a reasonable and articulable suspicion of actual physical control.

We affirm the order denying the suppression and the judgment of conviction.

SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.