1997 ND 144

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Robert WINKLER, Defendant and Appellant.**

**Criminal Nos. 970001, 970002.**

Supreme Court of North Dakota.

July 17, 1997.

Rehearing Denied Aug. 11, 1997.

Laurie A. Fontaine, Pembina County State's Attorney, Cavalier, for plaintiff and appellee.

Alan J. Larivee, Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, Grand Forks, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Robert Winkler appealed from the trial court's memorandum opinion, issued after remand, finding a peace officer's application for a search warrant was not based on information obtained in an illegal search. Winkler contends the illegal search prompted the search warrant application and, as a result, the evidence seized should be suppressed. We affirm.

[¶ 2] Winkler pled guilty, conditionally under Rule 11(a)(2), N.D.R.Crim.P., to negligent homicide and leaving the scene of an accident.[1] Winkler, while driving home from a bar, struck Gerald Carlson, who was walking along a road near Cavalier, North Dakota. Carlson died from the injuries sustained in the collision.

[¶ 3] The police, in investigating the accident, found a headlight assembly near the accident and questioned several people who had been at bars near the scene of the accident. These people informed the police Winkler had left the bar between 6:15 and 7:00 p.m. and drove away on the road where Carlson was struck. The police also learned the headlight assembly was from a late-model pickup truck, of a type which an officer knew Winkler owned.

[¶ 4] After acquiring this information, the police went to Winkler's residence. The garage door was open and they noticed a late-model pickup in the garage. The garage was unattached to the house. From the door the police could see the pickup had sustained some damage on the passenger-side fender, the side of the vehicle the police believed would have struck Carlson. The police, believing the vehicle was in plain view, entered the garage and found the pickup's passenger side headlight was knocked out and the fender was dented. The police applied for a search warrant. In the affidavit, the officer did not mention the entry into Winkler's garage or the detailed information the officers found in that entry alleging only they "could see with the lights from the patrol car that there was damage to the right front fender...." The warrant was issued and Winkler's pickup was seized. The headlight assembly found at the accident scene was from Winkler's pickup.

[¶ 5] Following the trial court's denial of his motion to suppress and his conditional guilty plea, Winkler appealed. We reversed and remanded the trial court's denial of the suppression motion pertaining to the search warrant evidence.[2] We determined the search warrant was supported by probable cause "derived from sources independent of the officers' unlawful entry into Winkler's garage...." *State v. Winkler*, 552 N.W.2d 347, 354 (N.D.1996) (*Winkler I*). However, because the trial court did not "explicitly find that the officers would have sought a warrant if they had not earlier entered Winkler's garage ..." our conclusion as to the probable cause issue did not resolve the ultimate issue of "whether the search pursuant to the warrant was in fact a genuinely independent source of the information and tangible evidence." *Id.* at 354 (quoting *Murray v. United States*, 487 U.S. 533, 542, 108 S.Ct. 2529, 2536, 101 L.Ed.2d 472 (1988)). We remanded "for a determination of whether the officers' decision to seek the warrant was caused by what they saw during the unlawful entry." *Winkler I*, 552 N.W.2d at 354 (citations omitted).

[¶ 6] The United States Supreme Court, in *Murray*, predicated its decision on the independent source doctrine, describing that principle as:

"The interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by put-

---

1. Winkler was also originally charged with driving under the influence of intoxicating liquor, under section 39–08–01, N.D.C.C. This charge was dropped prior to trial.

2. We affirmed the trial court's denial of Winkler's suppression motion regarding pre and post-arrest statements. *State v. Winkler*, 552 N.W.2d 347, 355–56 (N.D.1996) (*Winkler I*).

ting the police in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred.... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation."

*Murray*, 487 U.S. at 537, 108 S.Ct. at 2533 (quoting *Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984)) (emphasis as original in *Nix* ).

[¶ 7] Several federal courts, in applying *Murray*, affirmed the denial of suppression motions when "untainted information supporting the warrant, considered alone, [was] sufficient to establish probable cause [notwithstanding the illegal entry]." *United States v. Markling*, 7 F.3d 1309, 1316 (7th Cir.1993), *cert. denied*, 514 U.S. 1010, 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995) (citing *United States v. Restrepo*, 966 F.2d 964, 968–71 (5th Cir.1992), *cert. denied*, 506 U.S. 1049, 113 S.Ct. 968, 122 L.Ed.2d 124 (1992) and *United States v. Herrold*, 962 F.2d 1131, 1137–38 & 1140–43 (3d Cir.1992), *cert. denied*, 506 U.S. 958, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992)). Other Circuit Courts of Appeal agreed and evidence viewed during a prior illegal search will not always be excluded. *United States v. Mithun*, 933 F.2d 631, 635–36 (8th Cir.1991) *cert. denied*, 502 U.S. 869, 112 S.Ct. 201, 116 L.Ed.2d 161 (1991). *See also United States v. Reed*, 15 F.3d 928, 933–34 (9th Cir.1994) (holding warrant application which included tainted evidence still provided a magistrate with probable cause once tainted evidence was excised); *United States v. Perrone*, 936 F.2d 1403, 1413 (2nd Cir.1991) (evidence viewed during a protective sweep of a house following a drug arrest was the probable-cause basis for a search warrant application and should be admitted); *United States v. Salas*, 879 F.2d 530, 538 (9th Cir.1989) (officers' discussion regarding whether a warrantless entry should be attempted, based on prior information revealed during drug investigation, demonstrates the officers' belief they had probable cause to search), *cert. denied*, 493 U.S. 979, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989).

[¶ 8] We do not reverse a trial court's decision to deny a suppression motion if there "is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *State v. Erbele*, 554 N.W.2d 448, 450 (N.D.1996) (quoting *State v. Glaesman*, 545 N.W.2d 178, 181 (N.D.1996)). This standard recognizes the significance of the trial court's position in determining the credibility of witnesses. *State v. LaFromboise*, 542 N.W.2d 110, 112 (N.D.1996).

[¶ 9] Here, officer Calvin Cluchie testified he and the other officers:

"[D]iscussed it amongst ourselves that since it was an unattached garage and the pickup was in plain view that I could still enter as a part of an investigative stage to either confirm that I needed to get a search warrant to seize the vehicle, or to eliminate the vehicle so that we [could] continue looking for another vehicle."

The State also asked Cluchie if he would have sought the warrant if he had not entered the garage. Cluchie responded:

"Yes, I would have.... Based on the evidence that—or, the information we had obtained up to the point that I entered the garage. That would be the vehicle parts at the scene, the injuries stated by the doctor, the extreme head trauma, the information that we collected from the two barmaids, at Sammy's, and the one at Stu's, the fact that Mr. Winkler lives west of town and that he—to my knowledge, he had [sic] drove a newer type vehicle, and the fact that once I arrived out there I could see a dent or damage to the right front ... passenger side."

Furthermore, Cluchie, on cross-examination, stated, "[the damage to the truck observed while inside the garage] didn't prompt me [to seek the warrant], it just added to the case that I was building [against] the vehicle." Throughout his testimony, Cluchie repeatedly stated he believed he could search the vehicle because it was "in plain view."

[¶ 10] Cluchie's testimony was supported by Deputy Sheriff James Martindale, another officer who was present at Winkler's garage. Martindale also stated the reason they

investigated Winkler's garage was to eliminate him as a suspect, so the investigation could proceed. On remand, the trial court found:

> "[T]hat before the officers entered the garage they believed they had sufficient independent information which in fact they did have for a magistrate to make a probable cause determination to issue a search warrant. ... The reason [the officers] entered the garage was that they were under the mistaken belief that the plain view doctrine applied."

[¶ 11] The trial court determined the officers "failed to factor into their analysis ... the reasonable expectations of privacy that an individual would have in a garage just outside the home. If they would have considered that factor they would not have entered the garage and would have left to seek a warrant." The court recognized the search of the garage was confirmatory and the officers omitted information about the search in the warrant application because they were concerned the entry was possibly illegal. However, the court concluded "Officer Cluchie's observation of the front end of the pickup *was not the determining factor that compelled him to seek a search warrant.* He had sufficient independent information in his own mind to justify the issuance of a search warrant by a magistrate before he entered the garage ...." (emphasis added).

[¶ 12] In *Winkler I,* relying on *Murray,* we stated if an illegal entry occurred prior to seeking a warrant, the search pursuant to the warrant, in order to be valid, had to be based upon a source independent of the illegal entry. 552 N.W.2d at 353 (citing *Murray,* 487 U.S. at 542, 108 S.Ct. at 2535–36). To make this determination, a two-step analysis is required. First, the warrant must be supported by probable cause derived from sources independent of the illegal entry and, second, the decision to seek the warrant must not be prompted by observations made during the illegal entry. *Winkler I,* 552 N.W.2d at 353 (citations omitted). Despite our general deference to the trial court on issues of witness credibility, *see State v. Kenner,* 559 N.W.2d 538, 540 (N.D. 1997), in considering whether a warrant was

sought on independent sources or an illegal entry, *Murray* states we are "not to give dispositive effect to police officers' assurances on the point. Where the facts render those assurances implausible, the independent source doctrine will not apply." 487 U.S. at 540 n. 2, 108 S.Ct. at 2535 n. 2. This is not the case here, for the information discovered by the police demonstrates the sufficiency of the probable cause and supports the officers' statements the illegal entry did not prompt them to seek a warrant.

[¶ 13] Winkler is quick to point out the police admitted their search of the garage was to rule out the possibility of a case against Winkler. Winkler contends the search was thus confirmatory and the evidence should be suppressed. A confirmatory search is a "search to determine whether [police] would uncover evidence worth the trouble of obtaining a warrant." *United States v. Pena,* 924 F.Supp. 1239, 1256 (D.Mass.1996). Officer Cluchie stated "I could still enter as a part of an investigative stage to *either confirm that I needed to get a search warrant to seize the vehicle, or to eliminate the vehicle so that we [could] continue looking* ...." (emphasis added). But, it is apparent he used the term confirmatory not in the sense of whether to seek a warrant, but rather to determine if Winkler could be *eliminated* as a suspect.

[¶ 14] *Murray* requires us to determine if "the actual illegal search had any effect in producing the warrant ...," 487 U.S. at 542 n. 3, 108 S.Ct. at 2536 n. 3. The significance of whether the search is confirmatory is problematic. Some courts and commentators have stated *Murray* was "designed" to deal with confirmatory searches. *See Restrepo,* 966 F.2d at 971–72; *United States v. Mulder,* 889 F.2d 239, 241 (9th Cir.1989); *Pena,* 924 F.Supp. at 1256; Wayne R. LaFave, Search & Seizure § 11.4(f) at 298 (3d ed.1996). If we embraced Winkler's position, every search would likely be "confirmatory" for it would require an officer making a warrant application to believe the officer had not only probable cause, but proof beyond a reasonable doubt; there could be no question. We doubt the United States Supreme Court's

ruling in *Murray* was intended to create such a standard.

[¶ 15] *Murray* instructs us to determine what actually motivated the search and what was the intention of the officers in the specific case. 487 U.S. at 542, 108 S.Ct. at 2536. This results in a subjective, rather than objective test. *Restrepo,* 966 F.2d at 971–72; *see also,* LaFave, § 11.4(f) at 300. Here, probable cause to seek a warrant existed prior to the officers' entry. A warrant would have been sought with or without Officer Cluchie's illegal entry. Suppressing the evidence would put the police in a worse, not similar position, than if there had not been an illegal entry. *See Murray,* 487 U.S. at 541, 108 S.Ct. at 2535 (citing *Nix,* 467 U.S. at 443, 104 S.Ct. at 2508).

[¶ 16] Although we do not condone the officers' lack of knowledge of their authority to enter the garage and their decision not to inform the magistrate of the illegal entry,[3] Officer Cluchie's view of Winkler's truck did not prompt the officer to seek the warrant, nor was the entry solely to confirm Winkler's status as the leading suspect.

[¶ 17] We affirm the trial court's denial of Winkler's motion to suppress.

[¶ 18] SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.

---

**3.** If we were applying the "good-faith" exception, which we are not, it appears the failure to inform the magistrate about the entry to the garage could be fatal. *See, e.g., United States v. Reilly,* 76 F.3d 1271, 1280 (2nd Cir.1996)("recklessness may be inferred when omitted information was 'clearly critical' to assessing the legality of a search") citing *Rivera v. United States,* 928 F.2d 592, 604 (2nd Cir.1991)(good-faith exception does not apply when officers do not provide an issuing judge with details about their conduct during a pre-warrant search). Of course if information gleaned from an illegal search had been included in the affidavit, applying *Murray* to determine if it prompted the warrant would not only be made even more difficult, the question of whether it caused the magistrate to *issue* the warrant would also be present. *See, e.g., United States v. Walton,* 56 F.3d 551, 554 (4th Cir.1995) (*Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)) approach applicable, i.e., must examine search warrant absent illegally obtained information to determine whether untainted portion of affidavit set forth probable cause.