2000 ND 154

**STATE of North Dakota, Plaintiff
and Appellee,**

v.

**Robert Dean GREGG, Defendant
and Appellant.**

**No. 20000009.**

Supreme Court of North Dakota.

Aug. 18, 2000.

Brett M. Shasky, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Douglas W. Nesheim of Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Robert Dean Gregg appeals from a criminal judgment and commitment of the East Central Judicial District Court upon a conditional plea of guilty to possession of a controlled substance and drug paraphernalia. We affirm, concluding the district court properly denied Gregg's motion to suppress evidence.

I

[¶ 2] On July 20, 1999, West Fargo police were dispatched to the Hi–10 Motel to investigate a disturbance. At the motel, Sergeant Michael Reitan talked with Robert Gregg, Joey Johnson, and Julie Dodd

in the motel lobby. The three had been involved in the disturbance, which they described to Sergeant Reitan. Gregg, Johnson, and Dodd reported they had been in the motel room where Gregg "had been residing at for a period of time," when a man came to the door, demanded entry, and threatened them with a knife. The man kicked his way into the room, and Johnson struck him in the head with a bottle.

[¶ 3] While Sergeant Reitan was talking with Gregg, Johnson, and Dodd, Officers Donald Loberg and Jason Dura went to Gregg's room to look for the knife and other evidence related to the disturbance. While looking under the bed in Gregg's room, the officers found a gym bag containing drug paraphernalia, including syringes and smoking devices. They informed Sergeant Reitan about the discovery, and he told them to return the paraphernalia to the bag and put the bag back underneath the bed. The officers followed Sergeant Reitan's instructions.

[¶ 4] Sometime during the course of the interview in the lobby and the search of the room, the officers ran Gregg's, Dodd's, and Johnson's names and dates of birth "through driver's license and wants and warrants checks." Sergeant Reitan testified this was a standard practice. The check revealed Dodd and Gregg had their driving privileges suspended but Johnson had a valid North Dakota license.

[¶ 5] Officer Loberg told Gregg it would be best if he left West Fargo. Gregg, Johnson, and Dodd then transported some items from the room to a car registered to Gregg, and the officers left the scene.

[¶ 6] Sergeant Reitan testified that the officers then remained in the area of the motel, so if one of the three drove, the officers could stop the driver for driving under suspension. After leaving the motel, the officers learned Johnson's driving privileges had been suspended in Minnesota.

[¶ 7] Johnson eventually drove away from the motel in Gregg's car, with Gregg and Dodd as passengers. The officers pulled the car over.

[¶ 8] Officer Loberg had Johnson exit the car and placed him under arrest. Officer Loberg went to the passenger side of the car to ask Gregg whether he had insurance on the car. Gregg responded the car was not insured.

[¶ 9] While questioning Gregg, Officer Loberg noticed a syringe by Gregg's feet. The officer asked Gregg whether he or anyone else in the car was a diabetic. After Gregg responded "no," Officer Loberg asked him to exit the car.

[¶ 10] Officer Loberg retrieved the syringe and noticed a plastic bag containing a white powdery substance underneath the seat. Gregg was then arrested.

[¶ 11] The front passenger area of the car was searched, and drug paraphernalia was found. Officer Loberg decided Gregg's car should be impounded because it was parked "on the on ramp of I–94" and was a traffic hazard. The impound inventory revealed additional drugs and drug paraphernalia. The gym bag found at the motel room was found in the car.

[¶ 12] Gregg was charged with possession of drug paraphernalia and with two counts of possession of a controlled substance. He brought a motion to suppress all evidence seized from his car, arguing the stop and search violated the Fourth Amendment of the U.S. Constitution and N.D. Const. art. I, § 8.

[¶ 13] The district court denied the motion, finding the search and seizure was proper "under various exceptions to the warrant requirement, including plain view and impound inventory." The district court stated:

> my view is that if we keep the black bag under the bed and assume that nobody looked in the black bag, because there really were no consequences that followed from that discovery, Officer Reiten [sic] said this is wrong, put the bag

back under the bed, in my view that negates anything to do with that bag, and we just start fresh.

[¶ 14] The district court found Gregg and Johnson "gave the officers the second crack at the black bag by virtue of getting in a vehicle and driving when all three drivers had their licenses suspended." The court further concluded the syringe was found in plain view, which opened up a further search of Gregg's car.

[¶ 15] In addition, the court found:

They just happened to not have liability insurance on the car. Again, that was the defendants again assisting the officers with building their case. I don't know that there would have been a legitimate basis for the inventory search if the car had been insured and they could have gotten somebody to come out and get it and drive it away. But by virtue of their own—circumstance of their own making, I think they've put themselves in a box that requires that I dismiss your motion to suppress.

[¶ 16] On December 27, 1999, Gregg entered a conditional plea of guilty under N.D.R.Crim.P. 11(a)(2) in order to appeal the district court's order denying his motion to suppress evidence.

[¶ 17] The district court's criminal judgment and commitment was filed December 27, 1999, and Gregg's appeal was timely. N.D.R.Crim.P. 37(b); N.D.R.App.P. 4(b). The district court had jurisdiction under N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 29–28–06.

## II

[¶ 18] The issue on appeal is whether the district court erred in denying Gregg's motion to suppress drugs and drug paraphernalia obtained from the search of his car, because the evidence was a result of an illegal search and is "fruit of the poisonous tree."

[¶ 19] When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. *City of Grand Forks v. Zejdlik*, 551 N.W.2d 772, 774 (N.D.1996) (citing *City of Grand Forks v. Egley*, 542 N.W.2d 104 (N.D.1996)). We affirm the district court's decision unless we conclude there is insufficient competent evidence to support the decision, or unless the decision goes against the manifest weight of the evidence. *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994).

[¶ 20] "Although the underlying factual disputes are findings of fact, whether the findings meet a legal standard, in this instance a reasonable and articulable suspicion, is a question of law." *Zejdlik*, 551 N.W.2d at 774 (citations omitted). Questions of law are fully reviewable. *Id.* (citing *State v. Glaesman*, 545 N.W.2d 178 (N.D.1996)). The ultimate conclusion of whether the facts support a reasonable and articulable suspicion is fully reviewable on appeal. *State v. Hawley*, 540 N.W.2d 390, 392 (N.D.1995).

### A

[¶ 21] Gregg argues the evidence found in his car should have been suppressed under the "fruit of the poisonous tree" doctrine because the police officers exploited an illegal search and there was no intervening circumstance to purge the evidence of its original taint.

[¶ 22] We begin our analysis by evaluating each of the three warrantless searches that occurred in this case. The United States Supreme Court has defined a search, within the meaning of the Fourth Amendment, as an intrusion into a person's reasonable expectation of privacy. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, and Article I, § 8 of the North Dakota Constitution protect individuals from unreasonable searches and seizures by the government."

*State v. Blumler,* 458 N.W.2d 300, 301 (N.D.1990).

[¶ 23] When an individual reasonably expects privacy in an area, the government, under the Fourth Amendment, must obtain a search warrant unless the intrusion falls within a recognized exception to the warrant requirement. *Blumler,* 458 N.W.2d at 302. "In the absence of such an exception, evidence obtained in violation of the Fourth Amendment's protections against unreasonable searches must be suppressed as inadmissible under the exclusionary rule." *Id.* (citations omitted) (footnote omitted).

#### 1

[¶ 24] The first search that occurred in this case was the search by Officers Loberg and Dura of the gym bag found underneath the bed in Gregg's hotel room, where Gregg was living at the time. A person's home is an area that is constitutionally protected. *State v. Kitchen,* 1997 ND 241, ¶ 13, 572 N.W.2d 106. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Id.* (quoting *Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). Even if "a police officer is on legitimate duty," that does not give the officer automatic access to a person's property. *Kitchen,* at ¶ 16.

[¶ 25] In this case, the State concedes the search of the gym bag at Gregg's motel room was illegal.

#### 2

[¶ 26] The second search in this case was the search of the front passenger area of Gregg's car. The officers conducted this search after Gregg's car was stopped and Johnson was arrested. We conclude the evidence from this search is admissible under two exceptions to the warrant requirement.

[¶ 27] To stop a moving vehicle for investigative purposes, an officer must have an articulable and reasonable suspicion that a law has been or is being violated. *City of Fargo v. Sivertson,* 1997 ND 204, ¶ 9, 571 N.W.2d 137 (citing *State v. Neis,* 469 N.W.2d 568, 569 (N.D.1991)). The test is whether a reasonable person in the officer's position would be justified by some objective manifestation in suspecting potential criminal activity. *City of Grand Forks v. Zejdlik,* 551 N.W.2d 772, 775 (N.D.1996).

[¶ 28] In this case, the officers' stop of Gregg's car was valid because the officers observed Johnson driving Gregg's car and they knew Gregg, Johnson, and Dodd all had suspended driver's licenses. *See State v. Mische,* 448 N.W.2d 412, 414 (N.D.1989). Thus, the stop was based on probable cause and reasonable grounds for believing Johnson was driving under suspension.

[¶ 29] Officer Loberg testified that after the car was stopped, he saw, in plain view, a syringe on the floor next to Gregg's feet. After learning no one in the car was a diabetic, Officer Loberg retrieved the syringe and in doing so discovered what he suspected was a controlled substance.

[¶ 30] An officer with a plain view of contraband which gives rise to probable cause is not immunized from the warrant requirement unless the search falls within one of the exceptions to the requirement. *State v. Garrett,* 1998 ND 173, ¶ 16, 584 N.W.2d 502 (citing *State v. Koskela,* 329 N.W.2d 587, 591 (N.D.1983)). The State argues that two exceptions to the warrant requirement apply to the evidence found in the front passenger area of Gregg's car.

#### a

[¶ 31] The first exception the State argues is the search incident to a valid arrest. *See State v. Olson,* 1998 ND 41, ¶ 13, 575 N.W.2d 649. In *New York v. Belton,* the United States Supreme Court held that when a police officer has made a lawful arrest of the occupant of an automo-

bile, the officer may, "as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" without a warrant. 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (footnote omitted). *See State v. Erbele*, 554 N.W.2d 448, 450–51 (N.D.1996).

[¶ 32] In this case, the search of the front passenger area of Gregg's car was within the search-incident-to-a-lawful-arrest exception to the warrant requirement. The arrest of Johnson, based upon probable cause, gave the officer the right to perform a search incident to arrest. We conclude the search of the passenger compartment was a valid search incident to arrest.

### b

[¶ 33] The second exception the State argues is the automobile exception to the warrant requirement. Under the automobile exception, "if the search of an automobile without warrant is made upon probable cause, based upon a reasonable belief arising out of the circumstances known to the officer—that the automobile contains articles which are subject to seizure—the search is valid." *State v. Kottenbroch*, 319 N.W.2d 465, 469 (N.D.1982) (citing *State v. Binns*, 194 N.W.2d 756, 759 (N.D.1972)) (emphasis omitted).

[¶ 34] Here, Officer Loberg testified he saw, in plain view, a syringe on the floor next to Gregg's feet. The officer retrieved the syringe and in doing so discovered what he suspected was a controlled substance.

[¶ 35] The district court's finding that this search was valid, based on the syringe in plain view opening up further search of Gregg's car, is supported by the evidence. *See State v. Olson*, 1998 ND 41, 575 N.W.2d 649. Based on these circumstances, the officers had sufficient cause to believe the car contained additional contraband. Thus, the evidence found in the front passenger area of Gregg's car is also admissible under the automobile exception to the warrant requirement.

### 3

[¶ 36] The last search in this case was the search of the remainder of Gregg's car after the car was impounded. This Court has held that securing and inventorying the contents of motor vehicles "in police custody is predicated on the interest in protecting the owner's property while it is in police custody, protecting the police against claims of lost, stolen or vandalized property and protecting the police against danger posed by the inventoried property." *State v. Kunkel*, 455 N.W.2d 208, 211 (N.D.1990) (citations omitted). An inventory conducted using "reasonable police regulations relating to inventory procedures administered in good faith" is permissible under the Fourth Amendment. *Id.* In addition, a warrantless search of an impounded vehicle is acceptable "when the inventory is a routine caretaking procedure rather than one motivated by investigatory purposes." *Id.* (citing *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)).

[¶ 37] In the present case, Officer Loberg impounded Gregg's car because it was parked "on the on ramp of I–94" and was a traffic hazard. The district court found there was a legitimate impoundment and inventory search because the car was not insured. For these reasons, the officers' impound inventory was justified as a caretaking function. Thus, the car was properly impounded, and the evidence found in the impound inventory search is admissible under the inventory exception to the warrant requirement.

### B

[¶ 38] Gregg argues the evidence found in the second and third searches was tainted by the illegal search of the gym bag in his motel room. He claims this evidence should have been suppressed under the "fruit of the poisonous tree" doctrine because the officers exploited the illegal search. He further argues there was no

intervening circumstance to purge the evidence of its original taint.

[¶ 39] Any evidence obtained as a result of illegally acquired evidence must be suppressed as "fruit of the poisonous tree" unless an exception to the warrant requirement applies. *State v. Blumler*, 458 N.W.2d 300, 302 (N.D.1990) (citations omitted). *See Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Even though evidence may be characterized as fruit of the poisonous tree, it can be admitted if it was not produced by exploiting the illegally acquired information. *State v. Wahl*, 450 N.W.2d 710, 714 (N.D.1990) (citing C. Whitebread, *Criminal Procedure* § 2.04 (1986)).

[¶ 40] This "unpoisoning" of the fruit may be achieved by the State through the use of the "independent-source exception," the "inevitable-discovery exception," or the "attenuation exception" to the exclusionary rule. *Wahl*, 450 N.W.2d at 714 (citing C. Whitebread, *Criminal Procedure* § 2.04 (1986); 1 W. LaFave, *Criminal Procedure* § 9.3 (1984)). Because all three of these methods of "unpoisoning" are argued by the State, we will discuss each.

## 1

[¶ 41] Under the attenuation exception, suppression is not warranted unless " 'the challenged evidence is in some sense the product of illegal governmental activity.' " *Segura v. United States*, 468 U.S. 796, 815, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (quoting *United States v. Crews*, 445 U.S. 463, 471, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980)). Information is not the fruit of a poisonous tree simply because it would not have come to light without the illegal action of the police; rather, the proper inquiry is whether the evidence was obtained by exploitation of the illegal action or by means sufficiently distinguishable to purge the evidence of

the primary taint. *State v. Handtmann*, 437 N.W.2d 830, 837 (N.D.1989) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Evidence cannot be suppressed as fruit unless the government's illegal action is at least the "but for" cause of the later discovery of the evidence. *Segura*, at 815, 104 S.Ct. 3380 (citation omitted) (finding the illegal entry into the defendants' home did not contribute to the discovery of evidence seized under a warrant; thus, not even the threshold "but for" test was met).

[¶ 42] In *State v. Saavedra*, this Court held the defendant's actions—ignoring an officer's request to remain in the patrol car, attempting to return to his vehicle before the officers had finished investigating, and engaging in a scuffle with the officers—broke the chain of causation and dissipated the taint of the earlier illegal search. 396 N.W.2d 304, 305 (N.D.1986). *See State v. Indvik*, 382 N.W.2d 623 (N.D. 1986). This Court concluded the evidence supporting the defendant's disorderly conduct conviction resulted from his own willful acts and not from police misuse of the earlier illegal search. *Saavedra*, at 305. Accordingly, this Court held the trial court did not err in failing to suppress the evidence of the defendant's disorderly conduct. *Id.*

[¶ 43] To decide whether a defendant's actions break the chain of causation and dissipate the taint of an earlier illegal search, the following factors may be examined: "the temporal proximity of the illegality and the fruit of that illegality, the presence of intervening circumstances, and the purpose and flagrancy of the police misconduct." *Saavedra*, 396 N.W.2d at 305.

[¶ 44] The flagrancy of the police misconduct, important because of the exclusionary rule's purpose of discouraging such behavior, includes acts such as intentional harassment and use of excessive force. *Id.* The function of deterring police misconduct, however, does not extend to

evidence of an independent crime even though it was precipitated by an unlawful search by the government. *State v. Ritter,* 472 N.W.2d 444, 450 (N.D.1991) (citing *State v. Saavedra,* 396 N.W.2d 304, 305 (N.D.1986)).

[¶ 45] Gregg claims the drugs and drug paraphernalia found in his car would not have been found without the illegal search. In support of his argument, Gregg points to the closeness in time of the stop to the discovery of the drug paraphernalia in the gym bag in the motel room.

[¶ 46] In addition, he claims the police encouraging him to leave town "can only be reasonably explained by the desire to make a drug bust because of the fruits of the illegal search." In *Whren v. United States,* the United States Supreme Court held "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Id.* at 814, 116 S.Ct. 1769. This rule gives police officers "broad leeway" to perform searches and seizures regardless of whether their subjective intent matches the legal basis for their actions. *United States v. Miller,* 146 F.3d 274, 279 (5th Cir.1998) (footnote omitted). Under *Whren* rule, a party "is going to have difficulty in using subjective motive to attack an arrest which is otherwise objectively justified by probable cause." *Holland v. City of Portland,* 102 F.3d 6, 11 (1st Cir.1996).

[¶ 47] The attenuation analysis applies to the present case. The stop and search of Gregg's car occurred shortly after the illegal search. Even though the State admits the officers' search of the gym bag was illegal, the record does not reflect "flagrant" police misconduct such as intentional harassment or excessive force.

[¶ 48] The district court found the stop of Gregg's car was not prompted by the officers' observations made during the illegal search. The district court found that even without the illegal discovery of the contents of the gym bag, the officers still would have found the evidence in the car because Gregg and Johnson "gave the officers the second crack at the black bag by virtue of getting in a vehicle and driving when all three drivers had their licenses suspended."

[¶ 49] The officers' illegal search was not the "but for" cause of the discovery of the evidence found in Gregg's car. As in *Saavedra,* the facts support the conclusion that the discovery of the drugs and drug paraphernalia resulted from the intervening circumstances and the willful acts of Johnson and Gregg, not from misuse of the earlier illegal search. We conclude Johnson's crime of driving under suspension and the drug paraphernalia lying in plain view by Gregg's feet are means sufficiently distinguishable to purge the evidence of any primary taint.

2

[¶ 50] The State argues the evidence is also admissible under the inevitable-discovery and independent-source exceptions. The independent-source doctrine is based on evidence actually discovered through unrelated means, while inevitable discovery involves a question whether the evidence would have been discovered absent the illegal search. *See Murray v. United States,* 487 U.S. 533, 539, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (the inevitable-discovery doctrine is merely an "extrapolation" of the independent-source doctrine); *State v. Handtmann,* 437 N.W.2d 830, 837 (N.D. 1989).

[¶ 51] The inevitable-discovery doctrine provides that evidence obtained from information procured in an unlawful search or seizure is admissible under the fruit-of-the-poisonous-tree doctrine if the evidence would inevitably have been discovered without the unlawful conduct.

*Handtmann,* 437 N.W.2d at 837. This doctrine applies to evidence that is not actually discovered by lawful means, but inevitably would have been found. *State v. Winkler,* 552 N.W.2d 347, 358 n. 4 (N.D. 1996) (citing *United States v. Markling,* 7 F.3d 1309, 1318 n. 1 (7th Cir.1993)). Because we conclude the evidence was discovered by lawful means, the inevitable-discovery exception does not apply in this case.

### 3.

[¶ 52] The independent-source exception "allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Winkler,* 552 N.W.2d at 353 (citations omitted). *See Murray v. United States,* 487 U.S. 533, 538–40, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Unlike the inevitable-discovery doctrine, the independent-source doctrine applies when the evidence has been discovered by lawful means. *Winkler,* at 358 n. 4 (citing *United States v. Markling,* 7 F.3d 1309, 1318 n. 1 (7th Cir.1993)).

[¶ 53] Suppression of evidence should put the police in the same position they would have occupied had no violation occurred, rather than in a worse position. *State v. Winkler,* 1997 ND 144, ¶ 6, 567 N.W.2d 330 (citations omitted). In *Murray v. United States,* the United States Supreme Court held:

> Knowledge that the marijuana was in the warehouse was assuredly acquired at the time of the unlawful entry. But it was also acquired at the time of entry pursuant to the warrant, and if that later acquisition was not the result of the earlier entry there is no reason why the independent source doctrine should not apply. Invoking the exclusionary rule would put the police (and society) not in the *same* position they would have occupied if no violation occurred, but in a *worse* one.

487 U.S. 533, 541, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (citation omitted).

[¶ 54] In applying the independent-source exception, we have used a two-step analysis. *Winkler,* 1997 ND 144, ¶ 12, 567 N.W.2d 330. First, the warrant must be supported by probable cause derived from sources independent of the illegal search; and second, the decision to seek the warrant must not be prompted by observations made during the illegal search. *Id.* (citation omitted). *See Murray,* 487 U.S. at 540 n. 2, 108 S.Ct. 2529 (police officers' assurances are not to be given dispositive effect when the assurances are not supported by the facts; in such cases, the independent-source exception will not apply).

[¶ 55] This two-part test may be applied to the present case by analogizing the search warrant to the officers' stop of Gregg's car. The first part of the test, requiring that the stop must be supported by probable cause derived from sources independent of the illegal search, is met by our earlier conclusion the stop was made with probable cause to believe Johnson was driving with a suspended driver's license.

[¶ 56] The second part of the test, rephrased, requires that the stop of Gregg's car must not have been prompted by the officers' observations made during the illegal search. The district court found the stop of Gregg's car was not prompted by the officers' observations made during the illegal search. The court concluded that after the officers put the gym bag back underneath the bed, the officers "start[ed] fresh" and that "no consequences followed from that discovery." The court found its analysis should then proceed from the assumption that there never was an illegal search.

[¶ 57] The district court's findings are supported by the evidence. As in *Murray,* after the misconduct of the officers is removed, it is clear the officers had gained independent knowledge that Gregg, Johnson, and Dodd all had suspended driver's licenses. Thus, the officers still would have been justified in stopping the car for the driving offense, at which time the offi-

cers would have discovered the same evidence challenged here.

[¶ 58] Excluding the evidence the police officers ultimately obtained by the stop and seizure would not put the officers in the same position they would have been in had they not committed any unlawful conduct; instead, it would put them in a worse position. Accordingly, the evidence is admissible under the independent-source doctrine.

### C

[¶ 59] Because we find the second and third searches of Gregg's car are excepted from the warrant requirement, the evidence gained from these searches need not be suppressed. The district court's denial of Gregg's motion to suppress the evidence found in his car is supported by sufficient competent evidence and is not contrary to the manifest weight of the evidence.

### III

[¶ 60] The criminal judgment of the district court is affirmed.

[¶ 61] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.