Douglas R. BOROWICZ, Petitioner and Appellant,

v.

NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellee.

Civ. No. 940363.

Supreme Court of North Dakota.

March 21, 1995.

Richard A. Ohlsen, Moosbrugger, Ohlsen, Dvorak & Carter, Grand Forks, for petitioner and appellant.

Monte L. Rogneby, Asst. Atty. Gen., Atty. Gen. Office, Bismarck, for respondent and appellee.

VANDE WALLE, Chief Justice.

Douglas R. Borowicz appealed from a judgment of the district court, Northeast

Central Judicial District, affirming the decision of the North Dakota Department of Transportation suspending his driving privileges for violating section 39–08–01, N.D.C.C. Because the evidence supports the hearing officer's conclusion that the arresting officer had reasonable grounds to investigate a motor vehicle parked on a service road, we affirm.

At around 3:40 a.m. on June 3, 1994, Officer Marcus Erickson of the Grand Forks Police Department noticed a pickup parked northbound on the service road of North Columbia Road. He observed that the pickup's headlights were on and that someone was "sitting slumped inside." The pickup motor was not running. He positioned his patrol car behind the pickup and turned on the overhead lights. After seeing no movement from inside the pickup, Officer Erickson approached the driver's side window and "knocked for two separate series with [his] hand." He received no response but noted that the individual in the pickup, Borowicz, was breathing and appeared to be asleep. He then used his flashlight to knock louder on the window and was able to awaken Borowicz. Upon the officer's request, Borowicz opened the door of the pickup. Officer Erickson testified that at this point he observed that the keys were in the ignition and that "the ignition was turned partially forward[, n]ot enough to start the ignition of the vehicle."

When asked to produce his driver's license, Borowicz initially produced what appeared to Officer Erickson to be his health insurance card. Borowicz then provided the officer with a North Dakota Drivers' License and it was discovered that it had been surrendered to Minnesota authorities and that Borowicz was awaiting receipt of a Minnesota license after testing in that state.

Officer Erickson noticed that Borowicz smelled of alcohol and requested that he perform a series of field sobriety tests. Although Borowicz was able to count backwards from one hundred, he failed the alphabet, finger-dexterity, one-leg stand, and walk-and-turn tests. He was arrested for actual physical control of a vehicle while under the influence of alcohol, section 39–08–01,

N.D.C.C. Borowicz was taken to the Grand Forks Police Department where he consulted an attorney before providing a breath sample for testing. The tests showed an alcohol concentration level of .13. Borowicz was provided with a temporary driver's permit pending a hearing before the Department of Transportation.

The hearing officer concluded that:

"Officer Erickson had reasonable grounds to make a brief investigatory stop, then had reasonable grounds to believe that Douglas Borowicz was in actual physical control of a vehicle in violation of NDCC 39–08–01 or equivalent ordinance. Mr. Borowicz was arrested, was properly tested, and had an alcohol concentration of at least .10%."

She suspended Borowicz's license for 365 days. Borowicz appealed the suspension to the district court, where it was affirmed.

▇ In his appeal to this court, Borowicz argues that the suspension was illegal because Officer Erickson's "investigatory stop" was not within the realm of the community caretaking function of law enforcement and that the officer had no reasonable, articulable suspicion that Borowicz had committed or was committing a crime. We disagree.

▇ Our review is limited to the record compiled before the Department of Transportation. N.D.C.C. ch. 28–32; *See, e.g., Vogel v. Director, N.D. Dep't of Transp.*, 462 N.W.2d 129 (N.D.1990). We accord great deference to the rulings of administrative agencies. *Vogel, supra.* If the hearing officer's findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law, we will not disturb the decision. *Id.* We will "not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence ·from the entire record." *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979).

If Officer Erickson's initial actions in investigating the parked vehicle amounted to a "stop," he acted on reasonable suspicions which outweighed any Fourth Amendment interests which may have been implicated. *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329 (N.D.1987). In *Wibben*, a case involving facts similar to this one, a majority of this court noted the important public interest involved in the "actual physical control" offense and decided that "[c]omparatively, Wibben's privacy interest was minimal." *Id.* at 332–33. The *Wibben* majority noted that:

> "[i]t is not commonplace to be visibly seated in a car in a parking lot at 2:35 A.M. during an October night. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes.'"

*Id.* [citing *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985)].

The officer in *Wibben*, like Officer Erickson, was confronted with a situation in which an individual was behind the wheel of a parked car with the engine off. Not knowing if Wibben was sick or intoxicated, he tapped on the window with his flashlight. When Wibben responded by rolling down her window to say she was okay, the officer noticed that the keys were in the ignition and that Wibben exhibited symptoms suggesting she may have been under the influence of alcohol.

Although it is not necessary to decide whether a Fourth Amendment "stop" occurred, we do note the similarity of the facts to those in *State v. Franklin*, 524 N.W.2d 603 (N.D.1994), a case in which we held that there was no Fourth Amendment "stop." In *Franklin*, officers patrolling Valley City spotted two occupied vehicles among a row of parked cars in a motel parking lot. As they drove toward one of the vehicles they noticed "a pickup that had two subjects that appeared to be slumped down in the seat, their heads just barely visible" and a shotgun in a gun rack in the window. *Id.* at 604. Without blocking the pickup, the "officers got out

of their car and approached the pickup on opposite sides." *Id.* One of the officers recognized Franklin, a convicted felon, and spotted another weapon, a Chinese assault rifle, inside the vehicle. Franklin was arrested and charged under the law against felons possessing firearms.

In ruling that there was no Fourth Amendment "stop" in *Franklin*, we recognized that "[t]he law distinguishes between the approach of an already stopped vehicle and the stop of a moving one." *Id.* at 604 [citing *State v. Halfmann*, 518 N.W.2d 729 (N.D.1994)]. We reiterated that:

> "it is not a seizure for an officer to walk up to and talk to a person in a public place, including a person in a parked car. '[A] policeman's approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response.' *State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992), citing *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 334–35 (N.D.1987) (VandeWalle, Justice, concurring). Still, as we explained in *Langseth*, if an officer learns something during a public encounter with a person that causes a reasonable suspicion or probable cause, the encounter can justify further investigation, seizure, and even arrest. A public encounter does not foreclose the officer from making observations that reasonably lead to further action."

*Id.* at 604–05.

In this case, a stop arguably occurred when Officer Erickson requested Borowicz to open the door of the pickup and asked Borowicz to produce his driver's license. The requests could be interpreted as an order "to do something" depending on how it was made. *Franklin, supra.* However, by the time Officer Erickson requested Borowicz to open the door, he had observed enough to give him reasonable, articulable suspicion of actual physical control.

The evidence in the record from the administrative hearing supports the hearing officer's conclusion that Officer Erickson had

reasonable grounds to investigate the parked vehicle and, as a result of that investigation, had reasonable grounds to believe that Borowicz was in actual physical control of the vehicle in violation of section 39–08–01, N.D.C.C. Thus, we affirm.

MESCHKE, LEVINE and NEUMANN, JJ., and ROBERT L. ECKERT, District Judge, concur.

ROBERT L. ECKERT, District Judge, sitting in place of SANDSTROM, J., disqualified.