2007 ND 207

**Nancy Juanita BREWER, Petitioner and Appellant**

**v.**

**Francis G. ZIEGLER, Director, Department of Transportation, Respondent and Appellee.**

**No. 20070152.**

Supreme Court of North Dakota.

Dec. 20, 2007.

Mark A. Friese (argued) and Timothy Q. Purdon (appeared), Vogel Law Firm, Fargo, for petitioner and appellant.

Andrew Moraghan (argued) and Michael Trent Pitcher (appeared), Office of Attorney General, Bismarck, for respondent and appellee.

CROTHERS, Justice.

[¶ 1] Nancy Brewer appealed from a district court judgment affirming the Department of Transportation's ("Department") suspension of Brewer's driving privileges for 91 days. We hold Brewer's license was suspended in accordance with the law, and we affirm.

I

Facts

[¶ 2] On October 29, 2006, Highway Patrolman Robert Arman observed a van pull off Main Avenue in West Fargo onto a "field or abandoned parking lot." Arman was at that time responding to another call in Casselton. When he returned about 30 minutes later, he noticed the van was still parked in the lot, and he decided to approach the van to "see if everything was okay." When he arrived, Nancy Brewer was standing outside the vehicle and her husband, wearing a seatbelt in the front passenger seat, was leaning outside the vehicle with "vomit on his face." Nancy Brewer told the officer her husband was sick because he had too much to drink at dinner. She also told the officer she had consumed one drink. Arman smelled a strong odor of alcohol while talking to Nancy Brewer, and he noticed she had red and bloodshot eyes. He administered a horizontal gaze nystagmus test ("HGN"), which she failed. Brewer then consented to take an SD–2 screening breath test, which reflected she had a blood alcohol concentration above the legal limit. Ar-

man placed Brewer under arrest for being in actual physical control of a vehicle while under the influence of intoxicating liquor, in violation of N.D.C.C. § 39–08–01. An Intoxilyzer test was later conducted, also indicating a blood alcohol level above the legal limit.

[¶ 3] The Department subsequently suspended Brewer's license for 91 days. She requested and received a hearing on the suspension, which was upheld by the hearing officer and the district court.

II

Standard of Review

■■■■ [¶ 4] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs our review of an administrative suspension of a driver's license. *Johnson v. North Dakota Dep't of Transp.*, 2004 ND 148, ¶ 5, 683 N.W.2d 886. We exercise a limited review in appeals involving driver's license suspensions, and we affirm the agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address

the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

*Id.*; N.D.C.C. § 28–32–46. "If the hearing officer's findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law, we will not disturb the decision." *Borowicz v. North Dakota Dep't of Transp.*, 529 N.W.2d 186, 187 (N.D.1995). "We will 'not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.'" *Id.* (quoting *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D. 1979)). "When an 'appeal involves the interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the agency's order is not in accordance with the law.'" *Harter v. North Dakota Dep't of Transp.*, 2005 ND 70, ¶ 7, 694 N.W.2d 677 (quoting *Phipps v. North Dakota Dep't of Transp.*, 2002 ND 112, ¶ 7, 646 N.W.2d 704). The "interpretation of a statute is a question of law fully reviewable on appeal." *State v. Fasteen*, 2007 ND 162, ¶ 8, 740 N.W.2d 60.

### III

### Jurisdiction to Arrest

[¶ 5]  Brewer asserts Highway Patrolman Arman did not have jurisdiction to arrest her in a privately owned lot, because the patrolman's geographical jurisdiction only extends to state property and highways. A law enforcement officer acting outside the officer's jurisdiction is without official capacity and without official power to arrest. *State v. Demars*, 2007 ND 145, ¶ 21, 738 N.W.2d 486; *State v. Littlewind*, 417 N.W.2d 361, 363 (N.D. 1987); *see also Davis v. North Dakota Dep't of Transp.*, 467 N.W.2d 420, 423 (N.D.1991).

[¶ 6]  The powers of highway patrol officers are specified under N.D.C.C. § 39–03–09, which provides in relevant part:

The superintendent and each member of the highway patrol shall have the power:

1. Of a peace officer for the purpose of enforcing the provisions of this title relating to operators' licenses, the provisions of title 24 relating to highways, and of any other law regulating the operation of vehicles or the use of the highways, and in addition the highway patrol shall enforce all laws relating to the use or presence of alcoholic beverages in motor vehicles.

2. To make arrests upon view and without warrant for any violation committed in the person's presence of any of the provisions of this title relating to operators' licenses, or of title 24 relating to highways or to other laws regulating the operation of vehicles or the use of the highways.

. . . .

11. To exercise general police powers over all violations of law committed on state property.[1]

12. To exercise general police powers over all violations of law committed in

---

1. Subsection (11) was amended (S.L. 2007, ch. 317, § 1), effective August 1, 2007, subsequent to the relevant date of this case, to provide:

To exercise general police powers over all violations of law committed on state *owned or leased* property. (Emphasis added.)

their presence upon any highway and within the highway right of way or when in pursuit of any actual or suspected law violator.

[¶ 7] We must construe this statute to determine if Arman had authority to arrest Brewer in the private lot. "The primary purpose of statutory construction . . . is to ascertain legislative intent." *Dimond v. State Board of Higher Educ.*, 2001 ND 208, ¶ 8, 637 N.W.2d 692. Legislative intent must initially " 'be sought from the statutory language itself, giving it its plain, ordinary, and commonly understood meaning.' " *VanKlootwyk v. Baptist Home, Inc.*, 2003 ND 112, ¶ 12, 665 N.W.2d 679 (quoting *Public Serv. Comm'n v. Wimbledon Grain Co.*, 2003 ND 104, ¶ 20, 663 N.W.2d 186).

[¶ 8] Under N.D.C.C. § 39–03–09(11) and (12), the general powers of highway patrol officers extend over violations of law committed on state property or upon any highway or highway right-of-way. Referring to these subsections, Brewer asserts a highway patrol officer does not have jurisdiction to arrest a person who is not at the time of arrest located on a highway or state property. Brewer has too narrowly construed the powers given highway patrol officers under N.D.C.C. § 39–03–09.

[¶ 9] Under N.D.C.C. § 39–03–09(1) highway patrol officers have the power of peace officers for the purpose of enforcing the provisions of title 39 and for enforcing "all laws relating to the use or presence of alcoholic beverages in motor vehicles." Under N.D.C.C. § 39–03–09(2) highway patrol officers also have authority to make arrests for any violation committed under title 39 in their presence.

[¶ 10] " 'Statutes must be construed as a whole and harmonized to give meaning to related provisions, and are interpreted in context to give meaning and effect to every word, phrase, and sentence.' " *VanKlootwyk*, 2003 ND 112, ¶ 12, 665 N.W.2d 679 (quoting *Wimbledon Grain Co.*, 2003 ND 104, ¶ 21, 663 N.W.2d 186). To determine whether Arman had authority to arrest Brewer while she was located in the vacant West Fargo lot, we must construe Arman's express powers under N.D.C.C. § 39–03–09, in harmony with this Court's interpretation of conduct prohibited under N.D.C.C. § 39–08–01.

[¶ 11] In *State v. Novak*, 338 N.W.2d 637, 640 (N.D.1983), this Court concluded N.D.C.C. §§ 39–08–01 and 39–10–01, construed together, prohibit a person from being in actual physical control of a vehicle while under the influence of alcohol on private property and state highways. In reaching that conclusion, this Court stated, "to do otherwise ' . . . would defeat the purpose of the statute which seeks to protect all against the real danger caused by drunken drivers whether on the highway, a parking lot or elsewhere within the state.' " *Novak*, at 640 (quoting *State v. Valeu*, 257 Iowa 867, 134 N.W.2d 911, 913 (1965)). In *Wiederholt v. North Dakota Dep't of Transp.*, 462 N.W.2d 445, 451 (N.D.1990), this Court followed *Novak* and applied the statute's prohibition to a driver whose vehicle was located in a private farmyard.

[¶ 12] Under the *Novak* and *Wiederholt* precedent, an individual who is in actual physical control of a vehicle while under the influence of alcohol, whether located on a public highway or on private property, is in violation of the prohibited conduct under N.D.C.C. § 39–08–01. We conclude a highway patrol officer, who has the express power under N.D.C.C. § 39–03–09 to enforce the provisions of title 39 and to enforce all laws relating to the use or presence of alcoholic beverages in motor vehicles, has the concomitant power and jurisdiction to arrest a person who is

located on private property while violating the provisions of those laws. We, therefore, hold Highway Patrolman Arman had jurisdiction and authority to arrest Brewer for violating N.D.C.C. § 39–08–01 while she was parked on a private lot in West Fargo.

## IV

### Department's Jurisdiction to Suspend License

[¶ 13] Relying on *Aamodt v. North Dakota Dep't of Transp.*, 2004 ND 134, ¶ 23, 682 N.W.2d 308, Brewer asserts the Department did not have jurisdiction to suspend her license because Arman failed to check the "odor of alcoholic beverage" as a basis for probable cause to arrest in the report he filed with the Department under N.D.C.C. § 39–20–03.1(3). That statute provides in relevant part:

> The law enforcement officer, within five days of the issuance of the temporary operator's permit, shall forward to the director a certified written report in the form required by the director and the person's operator's license taken under subsection 1 or 2. If the person was issued a temporary operator's permit because of the results of a test, *the report must show that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01, or equivalent ordinance, that the person was lawfully arrested,* that the person was tested for alcohol concentration under this chapter, and that the results of the test show that the person had an alcohol concentration of at least eight one-hundredths of one percent by weight or, with respect to a person under twenty-one years of age, an alcohol concentration of at least two one-hundredths of

one percent by weight. (Emphasis added.)

[¶ 14] In *Aamodt*, this Court held an arresting officer must include in the report filed with the Department the grounds for probable cause to arrest, and failure to include that information precludes the Department from suspending driving privileges. This case is not controlled by *Aamodt*.

[¶ 15] In *Aamodt*, the arresting officer filed a report with the Department showing the only grounds for probable cause to arrest was an "odor of alcoholic beverage." The Department conceded the explanation provided in the report was an insufficient basis for the arrest, but argued that failure should not deprive the Department of authority to suspend driving privileges. We concluded the information in the report was insufficient to sustain a license suspension:

> In this case, the certified written report, which is the Report and Notice Form, stated the probable cause was an "odor of alcoholic beverage." The Department concedes this is insufficient to show probable cause, but argues that failure to comply with the statutory requirement should not deprive it of authority to suspend Aamodt's driving privileges.
>
> . . . .
>
> When determining whether to suspend a person's driving privileges, the Department must determine whether there were reasonable grounds to believe the person was driving or was in actual physical control of a vehicle while under the influence of alcohol, whether the person was properly tested, and whether the person's blood-alcohol level exceeded the legal limit.
>
> . . . .
>
> Driving privileges cannot be taken away without some basis. Requiring reasonable grounds before taking away

a person's driving privileges ensures the law is not too slanted in favor of the Department and protects those who should not be punished. Without a finding of probable cause, there is no basis for taking away a person's driving privileges. Aamodt was entitled to know what the officer was relying on.

We conclude the statutory provision at issue is a basic and mandatory provision and therefore the Department had no authority to suspend Aamodt's driving privileges.

*Aamodt*, 2004 ND 134, ¶¶ 15, 23, 25–26, 682 N.W.2d 308.

[¶ 16] Here, Arman testified that he inadvertently neglected to check "odor of alcoholic beverage" on the report as a ground for probable cause. However, Arman did check "failed field sobriety test(s)" and "failed screening test" as grounds for probable cause. He also wrote in the report that Brewer had "failed HGN" and had "failed SD–2." Unlike the inadequate report in *Aamodt*, the report filed by Arman included sufficient information to demonstrate his basis for finding probable cause to arrest Brewer. The report filed by Arman included adequate probable cause information to constitute a valid report for the Department to suspend Brewer's license. We conclude Brewer's assertion the Department lacked jurisdiction to suspend her license is without merit.

## V

## Unlawful Seizure

[¶ 17] Brewer asserts Patrolman Arman did not have probable cause to arrest her and she was, therefore, unlawfully seized under the federal and state constitutions.

[¶ 18] The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be se-cured in their persons, houses, papers and effects, against unreasonable searches and seizures." The Fourth Amendment prohibitions against unreasonable searches and seizures is applicable to the states through the Fourteenth Amendment. *Fasteen*, 2007 ND 162, ¶ 6, 740 N.W.2d 60. Brewer has not marshaled a separate state constitution argument and we will treat her objection as a Fourth Amendment issue.

[¶ 19] "Not all citizen-law enforcement encounters implicate a citizen's Fourth Amendment rights." *Rist v. North Dakota Dep't of Transp.*, 2003 ND 113, ¶ 8, 665 N.W.2d 45. "No seizure within the context of the Fourth Amendment occurs when an officer approaches a parked vehicle 'if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response.'" *Id.* (quoting *State v. Langseth*, 492 N.W.2d 298, 300 (N.D. 1992)). "[I]t is not a seizure for an officer to walk up to and talk to a person in a public place. A seizure occurs within the context of the Fourth Amendment only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478 (citations omitted). A caretaking encounter does not foreclose an officer from making observations that lead to a reasonable and articulable suspicion, and if, when approaching a parked vehicle in a caretaking encounter, an officer discovers something causing reasonable suspicion or probable cause, the officer may further investigate, seize, and even arrest. *Rist*, 2003 ND 113, ¶ 12, 665 N.W.2d 45; *Lapp v. North Dakota Dep't of Transp.*, 2001 ND 140, ¶ 14, 632 N.W.2d 419.

[¶ 20] The hearing officer found that Arman approached Brewer's vehicle "intending to see whether anyone was in need of assistance and to see whether it

was minors stopped there." That finding is supported by the record. Patrolman Arman testified he observed Brewer's van pull off Main Avenue onto a field or abandoned parking lot when he was responding to another call in Casselton. He testified that, upon returning 30 minutes later, he noticed Brewer's van was still parked in the field and he decided to approach the van to "see if everything was okay." This testimony supports the hearing officer's finding and conclusion that Arman was at that time conducting a caretaking operation.

[¶ 21] Arman testified, "I just pulled in and asked if everything was okay." While talking to Nancy Brewer, Arman noticed her eyes were red and bloodshot. Brewer voluntarily told the officer that her husband was sick because he had too much to drink at dinner and that she had also consumed an alcoholic beverage. Having heard Brewer's statements and having observed Brewer's appearance, the officer was justified in further investigating the situation. Arman then administered an HGN test, which Brewer failed. Brewer also consented to take an SD–2 screening breath test, and the results reflected she had a blood alcohol concentration above the legal limit. At that point, Arman had probable cause to place Brewer under arrest for violating N.D.C.C. § 39–08–01. We are unpersuaded by Brewer's argument that her constitutional rights against unlawful seizure were violated by Patrolman Arman. We hold Arman acted properly under the circumstances and Brewer's arrest was lawful.

## VI

### Admissibility of Screening Test Results

[¶ 22] Brewer asserts Arman's failure to give her an implied consent advisory, as

required under N.D.C.C. § 39–20–14, requires exclusion of the preliminary breath test results obtained by Arman upon administering the SD–2 test. Relevant to this proceeding, the statute [2] provided:

> The officer shall inform the person that refusal of the person to submit to a screening test will result in a revocation for up to three years of that person's driving privileges. If such person refuses to submit to such screening test or tests, none may be given, but such refusal is sufficient cause to revoke such person's license or permit to drive.

[¶ 23] The implied consent advisory informs a person that refusal to submit to a screening test will result in revocation of the person's driving privileges. The advisory is meant to inform a person of the severe consequences of refusing to take a screening test. Here, Brewer consented to take a screening test without the advisory being given to her. Brewer cites no authority to support her argument that preliminary test results must be excluded when a person voluntarily submits to a screening test without being given the implied consent advisory. Because Brewer did not refuse to take the screening test, she was not prejudiced by Arman's failure to give the advisory, and her argument is without merit.

[¶ 24] Brewer asserts the only permissible purpose for using the results of an onsite chemical screening test under N.D.C.C. § 39–20–14, is to determine whether a further test should be given. Brewer argues it was inappropriate, therefore, for Patrolman Arman to consider the SD–2 screening test result in determining whether there was probable cause to arrest Brewer.

---

**2.** Effective August 1, 2007, the statute provides refusal to submit to a screening test will result in a revocation of driving privileges for up to four years. S.L. 2007, ch. 325, § 6.

[¶ 25] Although N.D.C.C. § 39–20–14 provides that an onsite screening test may be used only for determining whether or not a further test should be given to ensure there is probable cause for arrest, this Court has held the statute would be rendered meaningless if construed to require that an officer make an arrest prior to conducting an onsite screening test. *State v. Woytassek*, 491 N.W.2d 709, 712 (N.D.1992). *See also State v. Schimmel*, 409 N.W.2d 335, 339 (N.D.1987). "The sole purpose of an onsite screening test is to assist a law enforcement officer in deciding whether there are reasonable grounds to arrest an individual." *Nichols v. Backes*, 461 N.W.2d 113, 114 (N.D.1990). We conclude it was appropriate for Patrolman Arman to utilize the results of Brewer's onsite screening breath test as a basis for determining probable cause to arrest Brewer for violating N.D.C.C. § 39–08–01.

## VII

### Admissibility of the HGN Test Results

■ [¶ 26] Relying on *City of Fargo v. McLaughlin*, 512 N.W.2d 700 (N.D. 1994), Brewer asserts Arman did not perform other field sobriety tests in addition to the HGN test, and, therefore, the HGN test results were not admissible without first providing scientific foundation by expert testimony. Because the Department did not offer expert foundation testimony, Brewer asserts the HGN test results were inadmissible and should not have been considered by the hearing officer in deciding whether Arman had probable cause to arrest Brewer.

[¶ 27] In *McLaughlin*, 512 N.W.2d at 707–708 (citations omitted), this Court discussed the foundation required for admitting HGN test results:

Under the circumstances of this case, where the HGN test was given in conjunction with other field sobriety tests that formed the basis for the officer's opinion testimony on the defendant's intoxication, we conclude that it was not reversible error to admit the officer's testimony about HGN test results without scientific foundation by expert testimony. We agree with those cases holding that the only foundation required is a showing of the officer's training and experience in administering the test, and a showing that the test was in fact properly administered. With that foundation, the HGN test results are admissible only as circumstantial evidence of intoxication, and the officer may not attempt to *quantify* a specific BAC based upon the HGN test. (Emphasis in original.)

Brewer's interpretation of the *McLaughlin* holding is too restrictive. In *McLaughlin*, this Court concluded that HGN test results are admissible as circumstantial evidence of intoxication without requiring scientific foundation by expert testimony. 512 N.W.2d at 708. However, this Court further concluded that, without additional foundation, "the officer may not attempt to *quantify* a specific BAC based upon the HGN test." *Id.* Under *McLaughlin*, the use of HGN test results as circumstantial evidence of intoxication, without requiring scientific foundation by expert testimony, is not dependent upon the officer conducting other field sobriety tests.

[¶ 28] Here, Arman performed both an HGN test upon Brewer and, with her consent, also conducted an SD–2 breath test. He concluded she failed both tests, giving him probable cause to arrest her for being in actual physical control of a vehicle while under the influence. We conclude that, under these circumstances and for the purpose of showing probable cause, the HGN test results were properly admitted and considered by the hearing officer.

## VIII

### Sufficiency of the Evidence

[¶ 29] Brewer asserts there was insufficient admissible evidence at the hearing to support the hearing officer's decision to suspend her driver's license. By statute, the Department can suspend a driver's license upon finding that a person is in actual physical control of a vehicle while under the influence of alcohol at concentrations above the legal limits. *See* N.D.C.C. § 39–20–04.1. We exercise a limited review under N.D.C.C. § 28–32–46 in appeals involving driver's license suspensions or revocations. *Johnson v. North Dakota Dep't of Transp.*, 2004 ND 148, ¶ 5, 683 N.W.2d 886. "We defer to the administrative agency's ruling by not making independent findings of fact or by substituting our own judgment for the agency's." *Rist*, 2003 ND 113, ¶ 6, 665 N.W.2d 45.

[¶ 30] The hearing officer found:

[Arman] approached the vehicle intending to see whether anyone was in need of assistance and to see whether it was minors stopped there.... Ms. Brewer informed Trooper Arman that she had been driving and pulled over because her husband became sick.... Ms. Brewer admitted to having consumed one alcoholic drink.... Trooper Arman smelled an odor of an alcoholic beverage coming from Ms. Brewer ... Ms. Brewer was given the HGN and the clues observed indicated impairment. Trooper Arman observed Ms. Brewer's bloodshot eyes.... Ms. Brewer consented to and submitted to the screening test, which was administered by Trooper Arman, a certified operator, on an approved unit using the approved method. The screening test reflected that Ms. Brewer had an alcohol concentration above the legal limit. Ms. Brewer was placed under arrest and given the implied consent advisory.

Based upon those findings, the hearing officer concluded:

Trooper Arman had reasonable grounds to believe that Ms. Brewer was driving or in actual physical control of a vehicle while under the influence of intoxicating liquor in violation of North Dakota Century Code section 39–08–01 or equivalent ordinance. Ms. Brewer was placed under arrest and properly tested in accordance with North Dakota law.

[¶ 31] We conclude the hearing officer's findings are supported by a preponderance of the evidence, and there is sufficient admissible record evidence to support the hearing officer's decision.

## IX

### Conclusion

[¶ 32] We hold the arresting officer had probable cause and jurisdiction to arrest Brewer for violating N.D.C.C. § 39–08–01. We further hold the hearing officer's findings of fact are supported by a preponderance of evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law. We, therefore, affirm the judgment upholding the hearing officer's suspension of Brewer's driving privileges for 91 days.

[¶ 33] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., DONOVAN J. FOUGHTY, D.J., concur.

[¶ 34] The Honorable DONOVAN JOHN FOUGHTY, D.J., sitting in place of KAPSNER, J., disqualified.