2010 ND 150

**Matthew John RICHTER, Petitioner and Appellee**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

**No. 20100026.**

Supreme Court of North Dakota.

Aug. 17, 2010.

Chad Rory McCabe, Bismarck, N.D., for petitioner and appellee.

Michael Trent Pitcher, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for respondent and appellant.

MARING, Justice.

[¶ 1]   The North Dakota Department of Transportation ("Department") appeals from a district court judgment reversing an administrative hearing officer's decision to suspend Matthew Richter's driver's license for 365 days for being in actual physical control of a motor vehicle while under the influence of alcohol.  We conclude a police officer's actions in this case did not violate the Fourth Amendment of the United States Constitution.  We reverse the judgment and remand for reinstatement of the hearing officer's decision.

I

[¶ 2]   At about 1:24 a.m. on January 8, 2009, a Mandan police officer was on patrol

in Mandan when he observed a single vehicle parked in the rear parking lot of a Mandan restaurant with the engine running and two people inside the vehicle. The officer testified he was suspicious because the restaurant had been closed for several hours and he knew the restaurant had been burglarized in the past. The officer testified he drove into the parking lot and parked his marked patrol car a short distance from the front passenger corner of the vehicle, but did not block its exit. According to the police officer, the headlights and "take-down" lights on his patrol car were on, and he described the "take-down" lights as "white clear lights, non-flashing lights, that are located on a light bar, on an emergency light white bar, and they're simply a . . . bright lights that shine in from a higher elevation into a . . . into a motor vehicle." [App. P. 4] The officer testified he did not have his emergency lights on, and he could not remember whether he used his spotlight. The passenger in the vehicle testified she remembered the patrol car's headlights shining on her, but she did not think the officer used a spotlight.

[¶ 3] According to the police officer, he was shining his flashlight into the interior of the vehicle as he approached the passenger side of the vehicle and made a circular hand gesture, directed at the passenger, to roll down the window. The officer testified he wanted to ask the occupants what they were doing there and the closed window made communication difficult. According to the passenger, she felt compelled to roll the window down out of respect for the police officer and she testified she did not believe they could have driven off. Once the window was rolled down, the officer detected the odor of alcohol emanating from the vehicle and noted the person in the driver's seat, Richter, had slightly bloodshot eyes and "thick" speech. Richter thereafter admitted

drinking a "couple" of beers that evening, and he failed several field sobriety tests. Richter was arrested for being in actual physical control of a motor vehicle, and he consented to a blood test, which established a 0.15 percent blood alcohol concentration.

[¶ 4] The Department notified Richter of its intent to suspend his driving privileges. Richter requested an administrative hearing, which was held on March 4, 2009. The hearing officer rejected Richter's claim the police officer had violated his constitutional rights, concluding the officer's hand gesture was not a seizure under the Fourth Amendment and no seizure occurred until after the officer detected the odor of alcohol from inside the vehicle. The hearing officer found Richter's vehicle was not blocked, the officer did not activate flashing lights on his patrol car, the officer did not order Richter to do anything nor demand any response from him, Richter could have driven away at any time, and the officer's nonverbal gesture was not a seizure under the criteria enumerated in *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), and under the Fourth Amendment. The hearing officer decided the police officer had reasonable grounds to arrest Richter and suspended his driver's license for 365 days. Richter moved for reconsideration. The hearing officer granted Richter's motion for reconsideration, but denied his requested relief on March 18, 2009.

[¶ 5] Richter appealed to the district court, claiming the hearing officer erred in deciding the police officer's actions were not a seizure under the rationale of *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 331 (N.D.1987). In Richter's administrative appeal, he submitted the district court's May 12, 2009, order in the City of Mandan's criminal

prosecution against him, which suppressed evidence seized as a result of the police officer's actions. In that criminal prosecution, the district court relied on *Wibben*, at 331, to hold the police officer's "request/order to roll down the window was a stop/seizure ... without reasonable suspicion" in violation of the Fourth Amendment. In Richter's appeal in this administrative proceeding, the district court reversed the hearing officer's decision, agreeing with the decision in the criminal prosecution and concluding the police officer's actions constituted an unreasonable search and seizure in violation of the Fourth Amendment.

## II

[¶ 6] Our review of an administrative agency's decision to suspend a driver's license is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Abernathey v. Department of Transp.*, 2009 ND 122, ¶ 6, 768 N.W.2d 485. We affirm the agency order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 7] "On appeal, we review the findings and decisions of the administrative agency." *Rist v. North Dakota Dep't of Transp.*, 2003 ND 113, ¶ 6, 665 N.W.2d 45. "[T]his Court 'review[s] an appeal from the determination of an administrative agency based only on the record filed with the court.'" *Sayler v. North Dakota Dep't of Transp.*, 2007 ND 165, ¶ 7, 740 N.W.2d 94 (quoting N.D.C.C. § 28–32–46). "We accord great deference to the rulings of administrative agencies." *Borowicz v. North Dakota Dep't of Transp.*, 529 N.W.2d 186, 187 (N.D.1995). "'If the hearing officer's findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law, we will not disturb the decision.'" *Brewer v. Ziegler*, 2007 ND 207, ¶ 4, 743 N.W.2d 391 (quoting *Borowicz*, 529 N.W.2d at 187). In reviewing an agency's findings of fact, "[w]e will 'not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.'" *Borowicz*, 529 N.W.2d at 187 (quoting *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979)).

## III

[¶ 8] The Department argues the police officer's actions did not violate the Fourth Amendment. The Department claims Richter's reliance on *Wibben* is misplaced

because this Court's subsequent decisions have undermined a statement in that case that a tap on a window of a parked car is a stop under the Fourth Amendment. Richter responds that the police officer's actions constituted a seizure without a reasonable and articulable suspicion of criminal activity in violation of the Fourth Amendment and the greater protections afforded him under N.D. Const. art. I, § 8.

[¶ 9] The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, and N.D. Const. art. 1, § 8 "guarantee '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Lapp v. North Dakota Dep't of Transp.,* 2001 ND 140, ¶ 7, 632 N.W.2d 419. "However, not all encounters between law enforcement officers and citizens constitute 'seizures' implicating the Fourth Amendment." *Abernathey,* 2009 ND 122, ¶ 8, 768 N.W.2d 485. In *State v. Albaugh,* 2007 ND 86, ¶ 11, 732 N.W.2d 712 (quoting *State v. Boyd,* 2002 ND 203, ¶ 6, 654 N.W.2d 392), we explained there are "'several permissible types of law enforcement-citizen encounters, including: (1) arrests, which must be supported by probable cause; (2) "Terry" stops, seizures which must be supported by a reasonable and articulable suspicion of criminal activity; and (3) community caretaking encounters, which do not constitute Fourth Amendment seizures.'"

[¶ 10] We have also distinguished between an officer's approach of a parked vehicle and the stop of a moving vehicle. *State v. Franklin,* 524 N.W.2d 603, 604 (N.D.1994). We have explained that an "officer's approach of a parked vehicle is not a seizure if the officer 'inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response.'" *City of Jamestown v. Jerome,*

2002 ND 34, ¶ 5, 639 N.W.2d 478 (quoting *State v. Langseth,* 492 N.W.2d 298, 300 (N.D.1992)). A "casual encounter" may also lead to a seizure where "an officer . . . learn[s] something during a . . . casual encounter that leads to a reasonable suspicion and that reasonably justifies further investigation, a seizure, or even an arrest." *Langseth,* 492 N.W.2d at 300. "A seizure occurs within the context of the Fourth Amendment only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Jerome,* at ¶ 5. "'[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *State v. Koskela,* 329 N.W.2d 587, 589 (N.D.1983) (quoting *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870). "'Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," . . . and not on the officer's actual state of mind at the time the challenged action was taken.'" *State v. Smith,* 452 N.W.2d 86, 88 (N.D.1990) (quoting *Maryland v. Macon,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985)).

[¶ 11] In *Wibben,* 413 N.W.2d at 330, an officer received an anonymous tip that a girl, later identified as Wibben, was sitting in a car parked in front of an apartment complex and appeared either sick or intoxicated. The officer responded, observed Wibben, then approached her vehicle and tapped on the window of the car with his flashlight. *Id.* Wibben rolled down the window and the officer observed her eyes were bloodshot, her speech was slurred, and the keys were in the ignition. *Id.* A majority of this Court stated, "[w]hatever the officer's motive in tapping on Wibben's

car window, a[n investigative] stop occurred" under the Fourth Amendment and evaluated the officer's conduct against the Fourth Amendment's proscription against unreasonable searches and seizures. *Id.* at 331 (citing *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). An opinion concurring in the result concluded the officer's conduct was not a "stop" for purposes of the Fourth Amendment, explaining:

> LaFave indicates there is no seizure if, for example, the officer interrogates in a conversational manner, does not order the defendant to do something or demand that he do it and does not ask questions which are overbearing or harassing in nature and does not make any threats or draw a weapon. On the other hand, the encounter becomes a seizure if the officer engages in conduct which a reasonable man would view as threatening or offensive if performed by another private citizen. 3 W. LaFave, *Search and Seizure*, § 9.2(h) (1987). LaFave observes this analytical approach is useful in those cases concerning police contact with persons seated within parked vehicles and states:
>
>> "... the mere approach and questioning of such persons does not constitute a seizure. The result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation. The officer may tap on the window and perhaps even open the door if the occupant is asleep. A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order that he do so. Likewise, the encounter becomes a seizure if the officer orders the suspect out of the car. So too, other police action which

one would not expect if the encounter was between two private citizens—boxing the car in, approaching it on all sides by many officers, or use of flashing lights as a show of authority—will likely convert the event into a Fourth Amendment seizure." 3 LaFave, *Search and Seizure*, at 415–417. [Footnotes omitted.]

*Wibben*, at 334–36 (VandeWalle, J., concurring in the result).

[¶ 12] This Court has not specifically overruled the statement in *Wibben* that a stop occurred when the officer tapped on the car window, but has generally recognized and followed the rationale of the opinion concurring in the result. *See Abernathey*, 2009 ND 122, ¶¶ 11–12, 768 N.W.2d 485; *Brewer*, 2007 ND 207, ¶¶ 19–20, 743 N.W.2d 391; *Rist*, 2003 ND 113, ¶ 8, 665 N.W.2d 45; *Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478; *Lapp*, 2001 ND 140, ¶ 8, 632 N.W.2d 419; *State v. Gahner*, 554 N.W.2d 818, 820 (N.D.1996); *City of Grand Forks v. Zejdlik*, 551 N.W.2d 772, 774 (N.D.1996); *Borowicz*, 529 N.W.2d at 188–89; *Franklin*, 524 N.W.2d at 604–05; *Langseth*, 492 N.W.2d at 300.

[¶ 13] In *Abernathey*, 2009 ND 122, ¶ 2, 768 N.W.2d 485, a police officer received a call that people were being disruptive at a bar after hours. The officer drove to the bar, which was supposed to be closed, and saw a pickup parked in the parking lot. *Id.* The officer approached the pickup without activating his red lights and parked his squad car so as not to block the path of the pickup. *Id.* Approaching the pickup, the officer noticed its doors were locked and asked the occupant in the driver's seat, Abernathey, to unlock the doors. *Id.* Abernathey provided a slurred response. *Id.* When the officer heard the response, he again asked Abernathey to "please" unlock the doors and to exit the

vehicle. *Id.* at ¶¶ 2, 13. After Abernathey exited the vehicle and upon smelling the odor of alcohol, the officer asked Abernathey to perform field sobriety tests, which he failed. *Id.* at ¶¶ 2–3. A hearing officer determined that no stop or seizure had occurred because the police officer did not ask Abernathey to exit the vehicle until after the officer had already formed a reasonable and articulable suspicion that Abernathey was in actual physical control of the vehicle. *Id.* at ¶ 4. This Court relied on the concurrence in *Wibben* and affirmed the hearing officer's decision to suspend Abernathey's driver's license, concluding no seizure occurred because the officer requested rather than commanded or ordered Abernathey to unlock his door and exit the vehicle. *Id.* at ¶¶ 11–15. We recognized the officer did not turn on his red lights and parked his patrol car so as not to block Abernathey's vehicle. *Id.* at ¶ 15. We also observed, "numerous courts have held that an occupant of a vehicle has not been 'seized' when a law enforcement officer requests, rather than orders or commands, that the occupant open a window or exit a vehicle." *Id.* at ¶ 12.

[¶ 14] In *Jerome*, 2002 ND 34, ¶ 2, 639 N.W.2d 478, a police dispatcher received an anonymous tip that Jerome was driving while intoxicated and relayed the information to Officer Shahin, who observed and followed Jerome's vehicle but did not attempt to stop the vehicle. *Id.* After Jerome parked her vehicle in her driveway and exited from it, Shahin asked in "a conversational and nonthreatening manner" if he could speak to her. *Id.* at ¶¶ 2, 7. Jerome answered affirmatively, and she was subsequently arrested for driving under the influence. *Id.* at ¶ 2. The district court denied her suppression motion, ruling Shahin's actions constituted a valid caretaking function. *Id.* at ¶ 3. We disagreed with the district court's conclusion about a caretaking function, but concluded

Shahin's approach toward and conservation with Jerome was not a stop under the Fourth Amendment. *Id.* at ¶¶ 8–9. We explained:

> When Shahin approached Jerome he requested permission to speak with her and she readily agreed to talk with him. Shahin did not escalate this casual encounter into a seizure by ordering Jerome to do something, by demanding a response, or by threatening her with a show of authority or command. There is no assertion or evidence that Jerome's consent was based upon any show of authority by Shahin or demand by him that she talk to him. Only when an officer by means of physical force or show of authority has in some way restrained the liberty of a citizen may we conclude that a Fourth Amendment seizure has occurred. *State v. Halfmann*, 518 N.W.2d 729, 731 (N.D.1994). Consequently, the trial court correctly concluded Shahin's actions in approaching and conversing with Jerome did not constitute a seizure or stop and did not implicate Jerome's Fourth Amendment rights.

*Jerome*, at ¶ 9.

[¶ 15] Here, the hearing officer found none of the circumstances indicative of a stop or seizure identified in *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870, were present in this case. In *Mendenhall*, the United States Supreme Court outlined several criteria for evaluating whether a stop or seizure has occurred, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* Our decisions after *Wibben* are consistent with the rationale of *Mendenhall*, and to the extent that *Wibben* holds a Fourth

Amendment stop or seizure occurs whenever a law enforcement officer taps on a window of a parked motor vehicle, we now overrule that decision and follow the rationale of the opinion concurring in the result in *Wibben*.

[¶ 16] Here, the police officer was the only officer at the scene and there is no evidence that he requested the assistance of any other officers. The officer testified he used his "takedown lights" to illuminate the area, but did not activate his flashing lights. According to the officer, he approached the parked vehicle with his flashlight and made a circular gesture to the passenger to roll the window down because the closed window made communication difficult. There is no evidence the officer ordered the passenger to roll the window down by drawing his weapon, having physical contact with her, or using any tone of voice or language to indicate compliance was necessary. *See Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870. Rather, the officer used a non-verbal hand gesture to communicate with the passenger of the stopped vehicle. While the passenger testified she did not feel they could just drive off, she also testified she rolled the window down out of respect for the officer. *See I.N.S. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (explaining that responses to a police officer's questions may be consensual even though individual may feel compelled and may not have been informed of the right not to respond; questioning does not result in Fourth Amendment detention unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870. The hearing officer found that the police officer's squad car was not blocking the parked vehicle's exit, no flashing lights were used, "[Richter] could have driven away at any time," and the circumstances indicative of a stop enumerated in *Mendenhall* were not present in this case, which include that the officer did not use language or a tone of voice indicating that compliance with the request might be compelled.

[¶ 17] The hearing officer's decision was based on his observation of the testimony of the police officer and the passenger, and we conclude the hearing officer's determination the police officer did not stop Richter when he gestured to the passenger to roll down the window is supported by the record. We conclude a reasoning mind could reasonably conclude the factual determinations made by the hearing officer were proved by the weight of the evidence from the entire record. The hearing officer's findings are supported by a preponderance of evidence and support the hearing officer's conclusion the officer's initial contact with the parked vehicle was not a stop or seizure under the Fourth Amendment.

[¶ 18] The hearing officer found there was no seizure until after the officer had detected the odor of alcohol from the vehicle and observed Richter's bloodshot eyes, which gave the officer reasonable suspicion to believe Richter was in actual physical control of the motor vehicle while under the influence of alcohol. *See Gahner*, 554 N.W.2d at 820 (holding no seizure because officer did not ask Gahner to exit his vehicle until after smelling odor of alcohol coming from inside). We conclude Richter's Fourth Amendment rights were not violated in this case.

## IV

[¶ 19] Richter also asserts N.D. Const. art. 1, § 8 grants him even greater protection against unreasonable searches and seizures than the Fourth Amendment. However, Richter did not raise this issue in his specifications of error to the district court and he did not argue that issue before the hearing officer.

[¶ 20] Section 28–32–42(4), N.D.C.C. states specifications of error shall specifically state the grounds on which the appeal is taken. This Court has stated, "[a] party who appeals from an administrative hearing officer's decision must comply with N.D.C.C. § 28–32–42(4)." *Dettler v. Sprynczynatyk,* 2004 ND 54, ¶ 13, 676 N.W.2d 799. "[T]o comply with the requirements of N.D.C.C. § 28–32–42(4), the specifications of error must 'identify what matters are truly at issue with sufficient specificity to fairly apprise the agency, other parties, and the court of the particular errors claimed.'" *Dettler,* at ¶ 15 (quoting *Vetter v. North Dakota Workers Comp. Bureau,* 554 N.W.2d 451, 454 (N.D.1996)). In *Dettler,* at ¶ 16, the appellant's specifications of error stated that a hearing officer's decision violated his constitutional and statutory rights. We said, "[s]imilar specifications of error have been found to be boilerplate." *Id.* We explained, "[b]oilerplate specifications of error are those that are general enough to apply to any administrative agency appeal." *Id.* at ¶ 15. Richter's specifications of error included a claim that the "hearing officer erred in determining [the police officer's] motion for the passenger to roll down the window was non-verbal conduct not indicative of a seizure under the Fourth Amendment." Richter's specifications of error are insufficient to raise a state constitutional claim.

[¶ 21] Other than conclusory assertions, Richter also has not marshaled any persuasive authority to support his argument that he should be afforded greater protections under N.D. Const. art I, § 8 than under the Fourth Amendment. Because this issue was not raised before the hearing officer, was not specifically stated in his specifications of error in accordance with N.D.C.C. § 28–32–42(4), and was not adequately supported in his appellate brief to this Court, we decline to address it in this appeal.

## V

[¶ 22] We reverse the district court judgment and remand for reinstatement of the hearing officer's decision.

[¶ 23] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 24] I respectfully dissent.

[¶ 25] Because the police officer seized Richter without reasonable suspicion, I would overturn the hearing officer's decision. As the majority opinion notes at ¶ 10, "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Koskela,* 329 N.W.2d at 589 (quoting *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870). *See also City of Devils Lake v. Grove,* 2008 ND 155, ¶ 9, 755 N.W.2d 485; *State v. Guscette,* 2004 ND 71, ¶ 8, 678 N.W.2d 126; *State v. Fields,* 2003 ND 81, ¶ 11, 662 N.W.2d 242. Under the totality of the circumstances present in this case, a reasonable person in Richter's position would not have believed he was free to leave, and a seizure occurred for the purposes of the Fourth Amendment.

[¶ 26] The police officer testified he parked the patrol vehicle "a distance away" from Richter's vehicle "off the passenger front bumper," and it was possible for Richter to drive away. The officer stated his vehicle's headlights and "take-down lights" were illuminated when he parked. He testified "take-down lights" are "the white clear lights, non-flashing lights, that are located on a light bar, on an emergency light white bar, and they're simply a ... bright lights that shine in from a higher elevation into a ... into a motor vehicle." As he approached Richter's vehicle, the officer testified he was "carrying my flashlight, shining that around inside the vehicle." The passenger testified it was clear a police cruiser entered the parking lot, and a police officer was approaching Richter's vehicle. Upon arriving at the passenger side door, the officer stated he "motioned for the female in the passenger seat to roll it down...."

[¶ 27] Where a police officer drives into a parking lot, activates "take-down lights" on the cruiser's emergency light bar, parks the patrol vehicle at an angle so as to shine its lights into the sole vehicle in the lot, approaches that vehicle while shining a flashlight throughout the passenger compartment, and then gestures for the passenger to roll down the window, a reasonable person would have believed that he was not free to leave rather than comply with the officer's request. Therefore, a seizure occurred for the purposes of the Fourth Amendment, and the hearing officer erred by concluding "[t]here was no stop in this case until after Officer Poppe smelled the odor of alcoholic beverage coming from inside the pickup."

[¶ 28] However, rather than consider the totality of the circumstances, the majority focuses upon whether a seizure occurred simply when the officer gestured for Richter's passenger to roll down the window. The majority, at ¶ 17, states: "[W]e conclude the hearing officer's determination the police officer did not stop Richter when he gestured to the passenger to roll down the window is supported by the record." Had the evidence only dealt with the police officer gesturing for the passenger to roll down the window, the hearing officer's finding would have been correct. However, the evidence established the officer's gesture was the last of a series of actions that, when viewed together, constitute a seizure under the Fourth Amendment because a reasonable person would have believed he was not free to leave.

[¶ 29] In concluding the officer did not seize Richter when he made the gesture, the majority overrules *Wibben*, 413 N.W.2d 329 (N.D.1987), "to the extent that *Wibben* holds a Fourth Amendment stop or seizure occurs whenever a law enforcement officer taps on a window of a parked motor vehicle...." Majority opinion, at ¶ 15. The majority also adopts the rationale of Justice VandeWalle's concurrence in *Wibben*. *Id.* I agree with the majority's decision to overrule *Wibben* and adopt the reasoning of the concurrence. However, I dissent because the majority fails to faithfully apply the full reasoning of the concurrence, which states an encounter between a private citizen and a police officer "becomes a seizure if the officer engages in conduct which a reasonable man would view as threatening or offensive if performed by another private citizen." *Wibben*, at 335 (VandeWalle, J., concurring in result) (citing 3 W. LaFave, *Search and Seizure*, § 9.2(h) (1987)). The concurrence also provides:

> [P]olice action which one would not expect if the encounter was between two private citizens—boxing the car in, approaching it on all sides by many officers, or use of flashing lights as a show

of authority—will likely convert the event into a Fourth Amendment seizure. *Id.* Thus, the *Wibben* concurrence recognizes a police officer's actions beyond requesting a vehicle occupant to roll down the window may cause an encounter to become a seizure under the Fourth Amendment. If the police officer acts in a manner a reasonable person would view as threatening, offensive, or which a person would not expect if the encounter was between private citizens, a seizure occurs under the Fourth Amendment. *See id.*

[¶ 30] A reasonable person would not expect another private citizen to act like the police officer did in this case. A private citizen sitting in the sole vehicle in a parking lot does not expect another private citizen to drive into the lot, activate "take-down lights," park his vehicle at an angle so as to shine its lights into the sole other vehicle in the parking lot, approach that vehicle while shining a flashlight throughout the passenger compartment, and gesture for the passenger to roll down the window. In fact, a reasonable person would likely find this behavior threatening. Considering the totality of the circumstances, and the extent to which the police officer's behavior deviated from that expected of a private citizen, the majority errs by affirming the hearing officer's finding that no seizure took place until after the police officer smelled alcohol emanating from inside Richter's vehicle.

[¶ 31] The two cases cited by the majority to support affirming the hearing officer's finding are factually distinguishable. As the majority opinion states at ¶ 13:

In *Abernathey,* 2009 ND 122, ¶ 2, 768 N.W.2d 485, a police officer received a call that people were being disruptive at a bar after hours. The officer drove to the bar, which was supposed to be closed, and saw a pickup parked in the parking lot. *Id.* The officer ap-

proached the pickup without activating his red lights and parked his squad car so as not to block the path of the pickup. *Id.* Approaching the pickup, the officer notices its doors were locked and asked the occupant in the driver's seat, Abernathey, to unlock the doors. *Id.* Abernathey provided a slurred response. *Id.* When the officer heard the response, he again asked Abernathey to "please" unlock the doors and to exit the vehicle. *Id.* at ¶¶ 2, 13.

In *Abernathey,* the police officer did not activate the patrol car's "take-down lights" and park at an angle so as to shine the lights directly into Abernathey's vehicle. The police officer also did not shine a flashlight into the passenger compartment upon approaching Abernathey's vehicle. The police officer in *Abernathey* approached the occupants in the vehicle conversationally. These factual distinctions make *Abernathey* inapposite to this case. A reasonable person in Abernathey's position would have felt he was free to leave, because the police officer approached him in a non-threatening manner. Contrastingly, a reasonable person in Richter's position would have felt the target of a police investigation and unable to leave on his own accord, because the officer acted in a more authoritative manner.

[¶ 32] The second case cited by the majority is even less pertinent. As the majority explains at ¶ 14:

In *Jerome,* 2002 ND 34, ¶ 2, 639 N.W.2d 478, a police dispatcher received an anonymous tip that Jerome was driving while intoxicated and relayed the information to Officer Shahin, who observed and followed Jerome's vehicle but did not attempt to stop the vehicle. *Id.* After Jerome parked her vehicle in her driveway and exited from it, Shahin asked in "a conversational and non-threatening manner" if he could speak to

her. *Id.* at ¶¶ 2, 7. Jerome answered affirmatively, and she was subsequently arrested for driving under the influence. *Id.* at ¶ 2.

Perhaps had the police officer parked his patrol vehicle at an angle, shined his "takedown lights" at Jerome, exited the vehicle, and approached Jerome while shining a flashlight at her, the case would be applicable. But without such factors, *Jerome* offers little precedential value for this case.

[¶ 33] Additionally, as the police officer in this case smelled alcohol emanating from Richter's vehicle after the seizure had already occurred, no reasonable suspicion supports the officer's actions. At the time the seizure occurred, the officer simply knew a vehicle with two occupants was parked behind a closed business around 1:30 a.m., the business had been burglarized in the past, and the vehicle was running. These facts are not enough to support a finding of reasonable suspicion. *See City of Minot v. Johnson*, 1999 ND 241, ¶ 10, 603 N.W.2d 485 ("We have also required more than an officer's awareness of past burglaries in an area to find a reasonable and articulable suspicion the defendant was, or was about to be, engaged in unlawful activity."); *State v. Robertsdahl*, 512 N.W.2d 427, 428 (N.D.1994) ("[The deputy sheriff's] unfamiliarity with the vehicle, his knowledge of past burglaries in the county, and the vehicle's location in the vicinity of [a liquor store] after hours amount to no more than a 'vague hunch' of illegal activity."); *State v. Sarhegyi*, 492 N.W.2d 284, 286 (N.D.1992) ("The only bases for [the police officer's] suspicions were the time of night, the burglary possibilities, the safety of the occupant, if the car was stolen, if someone needed assistance, and the fact that Sarhegyi began to pull away from [the officer] as he entered the lot. All these justifications are ... legally insufficient bases for reasonable suspicion when examined in light of existing case law.").

[¶ 34] Therefore, because the officer seized Richter without reasonable suspicion, I would reverse the hearing officer's decision.

[¶ 35] CAROL RONNING KAPSNER